**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Howard M. BALDWIN, Defendant and Appellant.**

**No. 13092.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 26, 1980.

Decided Dec. 30, 1980.

Jeffrey P. Hallem, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Howard M. Baldwin, pro se.

DUNN, Justice.

Howard M. Baldwin (Baldwin) appeals from the judgment entered upon a jury verdict finding him guilty of speeding. We reverse and remand.

At 10:47 a. m. on January 17, 1980, the Baldwin vehicle's speed was clocked by Highway Patrolman Abrams on Interstate 90 in Meade County, South Dakota. Abrams, by the use of a radar "speed gun," determined Baldwin's speed to be 74 miles per hour, well in excess of the 55 miles per hour speed limit. Baldwin was issued a citation for this violation.

Baldwin requested a jury trial, which was held on March 26, 1980. At the trial and on this appeal Baldwin has proceeded pro se.

Initially, the case was assigned to Magistrate Severns. The prosecuting attorney on March 20, 1980, properly moved for and was granted a change of judge. The case was reassigned to Magistrate Shelvin on March 21, 1980. Baldwin then filed an affidavit for change of judge on March 25, 1980. That evening Judge Hersrud, the presiding judge of the Eighth Judicial Circuit, telephoned Judge Moses and by voice order assigned the case to Judge Moses.[1] Judge Moses, pursuant to the voice of order, presided at Baldwin's trial. A written order assigning this case to Moses was signed on March 26, 1980, but was not filed until March 28, 1980.

Baldwin's first contention is whether Judge Moses could properly assume jurisdiction over this case prior to the filing of a written order as required by SDCL 15–12–32.

SDCL 15–12–32 provides that:

The presiding judge of the circuit court . . . shall review the affidavit [of prejudice] . . . and [if] it is determined that the affidavit is timely and that the right to file the affidavit has not been waived or is not otherwise legally defective, shall assign some other circuit judge or magistrate . . . as is appropriate to preside in such action, *by filing an order of such appointment* with the clerk of the court of the county wherein said action is pending. *From the filing of such order* the judge or magistrate therein designated shall have full power, authority and jurisdiction to proceed in the matter. (Emphasis supplied.)

The language of SDCL 15–12–32 is too plain to require interpretation. Reassignment of a case is only accomplished by "filing an order" appointing a new judge. This order must be filed with the clerk of the court of that county. Jurisdiction vests in the reassigned judge only from the time of "the filing of such order." See generally, *State v. Lehman,* 203 Neb. 341, 278 N.W.2d 610 (1979).

There is no indication in the record that the order was filed with a clerk having jurisdiction in Meade County, or marked "filed with the Court" by a judge having jurisdiction in Meade County on the date

1. Judge Hersrud was in Lemmon, South Dakota, well over one hundred miles from Sturgis, South Dakota, where the trial was to take place the next morning.

executed. The order was only filed with the clerk of the court of Meade County two days after trial. Therefore, Judge Moses was without jurisdiction to hear the case on March 26, 1980, and we must reverse and remand for lack of jurisdiction.

As we are reversing and remanding for a new trial due to lack of jurisdiction, we will address other issues raised on appeal that may arise upon re-trial.

■ Baldwin contends that the assessment of "costs of investigation"[2] was improper in this case. Baldwin was fined $100 plus "costs of investigation" in the amount of $491.38. Although it is not clear from the trial court's order or the record, both sides apparently concede that part, if not all, of these costs are allocable to the expense of bringing in Michael Thul as an expert witness for the State. Thul was flown in from Vail, Colorado, merely for the edification of the jury on the workings of a radar "speed gun." None of the testimony presented by Thul related to the particular radar "speed gun" used in clocking Baldwin, nor was there any apparent need to verify the underlying scientific principles upon which a radar "speed gun" operates.[3] Baldwin did not claim that this particular radar "speed gun" was defective and even if he had, no tests or even a visual inspection of this radar "speed gun" were made by Thul. At trial Baldwin did not challenge the veracity of radar.

SDCL 23A–27–26 states in part: "In all criminal actions, upon conviction of the defendant, the court may adjudge that the defendant pay the whole or any part of the costs of the prosecution." This would generally allow for the imposition of the "costs of prosecution" upon a defendant. It should not, however, give the prosecuting attorney an unbridled right to bring in an unneeded expert from out of state and then request that the defendant be required to pay the costs incurred in bringing in the expert.

> Costs properly taxable to a defendant in a criminal cause are not all the costs which the person having charge of the prosecution may see fit to make, but only such as there was actual, apparent, or probable necessity for incurring. In determining what costs fall within this description, the trial court has, of course, a very large discretion, but its decision nevertheless is subject to review, and will be reversed or modified whenever it appears that there has been an abuse of the discretionary power.

*Biester v. State*, 65 Neb. 276, 279, 91 N.W. 416, 417 (1902). See also *People v. Wallace*, 245 Mich. 310, 222 N.W. 698 (1929).

We see no actual, apparent, or probable necessity for bringing in this expert witness. The trial court abused its discretion in allocating these unnecessary costs against Baldwin.

As for Baldwin's other contentions, in *State v. Peterson*, 266 N.W.2d 103 (S.D. 1978), we held that there is no constitutional right to lay counsel; we also find no merit to Baldwin's contention that the State waived its right to file an affidavit for change of judge.

Accordingly, we reverse and remand for a new trial in accordance with the dictates of this opinion.

All the Justices concur.

---

2. It appears that both sides concede that this is really a misnomer and should be "costs of prosecution" as contemplated by SDCL 23A–27 26.

3. In fact, the court gave an instruction that removed from the jury the question of the validity of the radar "speed gun." That instruction states:

> You are instructed that radar devices, such as the one involved in the instant case, operate on a scientific principle known as the "Doppler Effect." The speed of a vehicle is measured by the emission of a signal of known frequency, which, in turn is reflected from the vehicle being measured with the difference in frequency (caused by the movement of that measured vehicle) being calibrated into a velocity reading. The *validity* and *accuracy* of this scientific principle is given judicial notice by this court and therefore, you need not concern yourself nor consider the scientific principle and *must accept that as being a matter of law.* (Emphasis supplied.)