1996 SD 134

**Gene Vernal LODERMEIER, Petitioner and Appellant,**

v.

**Joe CLASS, Warden for the South Dakota State Penitentiary, Appellee.**

**No. 19444.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 12, 1996.

Decided Nov. 13, 1996.

David M. Hosmer of Hosmer & Kettering, Yankton, for petitioner and appellant.

Mark Barnett, Attorney General, Todd A. Love, Assistant Attorney General, Pierre, for appellee.

KONENKAMP, Justice.

[¶ 1] Gene Lodermeier appeals the denial of his application for writ of habeas corpus. We affirm.

## BACKGROUND

[¶ 2] Lodermeier was convicted by a jury on October 26, 1988, of three counts of possession of stolen property and three counts of possession of property with altered serial numbers. He was sentenced to forty-five years in the South Dakota State Penitentiary. We affirmed on direct appeal. *State v. Lodermeier*, 481 N.W.2d 614 (S.D.1992). The facts on the present matter will be discussed to the extent necessary to resolve the issues. Although Lodermeier raised one hundred seven issues before the habeas court and now maintains thirteen issues on appeal, we find only six have sufficient merit for discussion:

I. Whether the trial court had jurisdiction.

II. Whether Lodermeier's trial counsel was ineffective.

III. Whether SDCL 22–11–27 is unconstitutionally vague.

IV. Whether issues raised before the habeas court were improperly dismissed as res judicata.

V. Whether the trial judge's purported bias affected his rights.

VI. Whether charges against Lodermeier were improperly joined.

## ANALYSIS

[¶ 3] Our standard of review for a habeas corpus appeal is firmly established:

Habeas corpus is not a substitute for direct review. Because habeas corpus is a collateral attack upon a final judgment, our scope of review is limited. On habeas

review, the petitioner has the initial burden of proof. We review the habeas court's factual findings under the clearly erroneous standard.

> Habeas corpus can be used only to review (1) whether the court had jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights.

*Loop v. Class,* 1996 SD 107, ¶ 11, 554 N.W.2d 189 (citing *Two Eagle v. Leapley,* 522 N.W.2d 765, 767 (S.D.1994) (citations omitted)).

### [¶ 4] I. Jurisdiction

■ [¶ 5] Lodermeier informally requested Judge Gene Paul Kean to recuse himself. Judge Kean agreed and the late Judge R.D. Hurd eventually took the assignment.[1] SDCL 15–12–21.1 provides in part:

> Prior to filing an affidavit for change of judge, the party or his attorney shall informally request the judge or magistrate who, in the ordinary course, would preside at the hearing or trial, to disqualify himself. . . . If the judge or magistrate grants the request, he shall forthwith notify the presiding judge, who shall assign the case to some other judge or magistrate. . . .

No written order assigning Judge Hurd was ever filed with the clerk of courts. Without an order, Lodermeier asserts Judge Hurd never acquired jurisdiction and thus all subsequent proceedings are void. In *State v. Baldwin,* 299 N.W.2d 820 (S.D.1980), this Court interpreted SDCL 15–12–32, which provides in part:

> The presiding judge . . . of the circuit shall review the affidavit . . . [and] shall assign some other circuit judge or magistrate of that circuit . . . by filing an order of such appointment with the clerk of the court of the county wherein said action is pending. From the filing of such order the judge or magistrate therein designated shall have full power, authority and jurisdiction to proceed in the matter.

*Id.* at 821. A formal order under SDCL 15–12–32 is an obvious prerequisite to jurisdiction as it provides, "From the filing of such order the judge or magistrate therein designated shall have full power, authority and jurisdiction to proceed in the matter." *Baldwin,* 299 N.W.2d at 821; *see also State v. Peterson,* 531 N.W.2d 581 (S.D.1995)(conviction and judgment reversed and remanded for new trial where affidavit for removal denied on review by sitting judge, rather than presiding judge).

[¶ 6] Here the affidavit procedure was inapplicable because the informal procedure of SDCL 15–12–21.1 was used. This method averts the technical niceties of removal by affidavit found in SDCL 15–12–32. Explicit language in SDCL 15–12–32 requires an order be filed before jurisdiction vests, whereas no such requirement is found in SDCL 15–12–21.1. Lodermeier asked and Judge Kean agreed to voluntarily disqualify himself. No formal order was required to assign a new judge.

### [¶ 7] II. Ineffective Assistance of Counsel

■ [¶ 8] Our standard for evaluating claims of ineffective assistance of counsel derives from the two-part test enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

> To reverse a conviction on ineffective assistance grounds, a [petitioner] must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. The test for prejudice is whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

*Boykin v. Leapley,* 471 N.W.2d 165, 167 (S.D. 1991).

> Whether a defendant has received ineffective assistance of counsel is essentially a mixed question of law and fact. In the absence of a clearly erroneous determination by the circuit court, we must defer to its findings on such primary facts regarding what defense counsel did or did not do in preparation for trial and in his presenta-

---

1. Judge Hurd died May 1, 1995.

tion of the defense at trial. This court, however, may substitute its own judgment for that of the circuit court as to whether defense counsel's actions or inactions constituted ineffective assistance of counsel. *Loop*, 1996 SD 107, ¶ 11, 554 N.W.2d 189 (quoting *Aliberti v. Solem*, 428 N.W.2d 638, 640 (S.D.1988)).

### [¶ 9] A. Sentencing

■ [¶ 10] Lodermeier claims his counsel was ineffective at sentencing because he failed to object to allegedly inaccurate facts the prosecutor advanced at sentencing. Specifically, he asserts that his trial counsel allowed the judge to erroneously rely on information regarding Lodermeier's alleged involvement in the disappearance of Lodermeier's wife and in the pipe-bombing of a Sioux Falls police officer's car. In his comments at sentencing, however, Lodermeier's trial counsel challenged the State's characterization of the defendant, specifically mentioning unindicted bad acts ascribed to Lodermeier. As such, we cannot say that this was ineffective assistance. Even if counsel had protested with a zest more to Lodermeier's liking, it would have been of little consequence, as Judge Hurd noted during sentencing that he gave no weight to the allegation regarding the death of Lodermeier's wife. As an indication of his dangerousness, he gave token consideration to the pipe-bombing incident, since Lodermeier was an official suspect. Nevertheless, Judge Hurd clearly based his sentence on other overarching factors.[2]

### [¶ 11] B.   Improper Defenses

■ [¶ 12] Lodermeier asserts his trial counsel was ineffective by failing to advance available defenses under landlord-tenant statutes: as a "landlord" he was entitled to seize allegedly stolen property the tenant abandoned. Selection of a defense is a trial

strategy this Court will seldom reevaluate. *Fast Horse v. Leapley*, 521 N.W.2d 102, 106 (S.D.1994). In any event, failure to assert a defense on the basis of the landlord-tenant statutes was *not ineffective assistance* in this case, as the statute in question, SDCL 43–32–26, relates to residential leases.[3] The property Lodermeier would have us apply this statute to was left on commercial premises formerly occupied by Lodermeier and his business partner.

■ [¶ 13] Further, Lodermeier asserts his attorney was ineffective in failing to offer a claim of right defense; this would have possibly negated the state of mind element in the charges for possession of stolen property. A jury instruction on mistake of fact was given, which read, in part, "Where a person honestly and reasonably believes certain facts, and acts or fails to act based upon a belief in those facts, which, if true, would not result in the commission of a crime, the person is not guilty." This advised jurors of a legal option similar to what a claim of right defense would have allowed, permitting them to find for Lodermeier on the state of mind element, if the evidence justified it. Therefore, we find no ineffective assistance here.

### [¶ 14] C.   Prosecutorial Misconduct

■ [¶ 15] Lodermeier contends his trial counsel was ineffective for failing to object to behavior by the State which amounted to prosecutorial misconduct. First, Lodermeier argues the State violated the trial court's in limine order preventing the State from referring to Lodermeier's prior federal conviction. The trial court ruled:

I have performed the balancing test. I have concluded to allow the State to elicit that the defendant was convicted of a felony in [the] U.S. District Court for the District of South Dakota and when that

---

2. These factors included Lodermeier's twenty-year criminal history, lack of remorse, attempted fabrication of evidence, retaliatory destruction of private property and his taking preliminary steps to have witnesses killed, steps which were not successful. Judge Hurd stated on the record that there was insufficient evidence to charge Lodermeier with the pipe bombing, so he obviously was not acting under any misconception about the significance of the incident.

3. The statute provides, in part, "the property of a lessee … left on leased *residential* premises by the lessee after the lessee has quit the premises shall be stored by the lessor…. After storing the property for thirty days or more the lessor may treat the property as abandoned and dispose of it." (emphasis added).

conviction occurred is more probative than prejudicial on the issue of impeachment of credibility and should be allowed. The nature of the conviction, what the nature of the conviction was for, or any of the specifics surrounding the conviction are more prejudicial than probative and they may not go into those.

In response to the State's inquiry concerning the scope of this ruling, the trial court responded, "I don't want it brought out that the defendant's ever been in the penitentiary, convicted of anything, unless he testifies." Lodermeier argues the State's opening statement violated the in limine order. However, the State simply mentioned a date on which law enforcement found Lodermeier in possession of a stolen Case 580 backhoe (the subject of the federal conviction) and described the circumstances surrounding it, without mentioning the conviction itself.[4] Judge Hurd had ruled that while the conviction itself could not be disclosed, the State would be allowed to present evidence that the stolen backhoe was in Lodermeier's possession and the serial numbers had been removed. We fail to see any prosecutorial misconduct, so failure to object cannot constitute ineffective assistance.

[¶ 16] Lodermeier also contends his trial counsel failed to properly object to testimony of certain State witnesses concerning the prior federal conviction. Although trial counsel did object to the comments on the basis of SDCL 19–12–3 (Rule 403—balancing test) and SDCL 19–12–5 (Rule 404—other bad acts), Lodermeier argues counsel erred in not objecting on the basis of a violation of the in limine order. The underlying basis for the in limine order was the trial court's balancing of the prior conviction's probative value against its possible prejudice to Loder-

meier and whether the prior conviction was admissible to show proof of intent, plan, or absence of mistake. *See* SDCL 19–12–5. Clearly, trial counsel's objections were sufficient to preserve the issue for direct appeal, precluding review in this habeas corpus action.[5] *Miller v. Leapley*, 472 N.W.2d 517, 518 (S.D.1991). Hence, we find that trial counsel properly objected, and there is no basis for an ineffective assistance of counsel claim.

[¶ 17] Lodermeier also asserts trial counsel failed to object to alleged vouching by the State. During its closing argument, the State argued, "She's [State witness] not the kind of young lady that is going to come in and lie. She really has no reason to come in here and lie to you about that." In *State v. Goodroad*, we found the State improperly vouched for a witness when the prosecutor stated the witness was staking his freedom on the truth due to a plea agreement entered into with the State. 455 N.W.2d 591, 594–95 (S.D.1990). Yet in this instance the prosecutor's remarks did not suggest he had some superior knowledge or criterion, not available to the jury, to establish the witness was testifying truthfully. The remarks were fair comment inviting the jury to simply behold the witness as being a person who would not lie, with no apparent bias against Lodermeier. Further, Lodermeier has not shown how the outcome of his trial was affected by trial counsel's failure to object; he has shown no prejudice.

[¶ 18] Last, Lodermeier contends his trial counsel's failure to object to comments made by the State concerning the burden of proof permeated the entire trial to such an extent that his conviction requires reversal. He highlights several comments made by the

---

**4.** The portion of the State's opening statement which Lodermeier finds objectionable:

> The State will seek to introduce evidence that the defendant on June 19, 1984, was found to be in possession of stolen property, [a] Case 580 backhoe. The State's evidence will show that the defendant at that time, June 21, 1984, about two weeks prior to the dates of theft of the big Bobcat in Brookings, and the lawn and garden tractor in Elk Point, was found in possession of this backhoe. The officers who found him, [a] highway patrolman and a depu-

ty sheriff were paying enough attention that an identifying decal, dealer decal plate which had been adhesively applied to the backhoe—when those two officers noticed that missing dealer label they immediately looked for it and found that decal in the left front pants pocket of the defendant.

**5.** Considerations on the admissibility of the prior conviction were previously addressed by this Court on direct appeal. *Lodermeier*, 481 N.W.2d at 625–26.

State during closing argument about defense theories, interpretation of evidence, and failure to call witnesses. Initially, we have held that counsel are "allowed considerable latitude in argument and have the right to comment upon matters supported by evidence." *State v. Burtts,* 81 S.D. 150, 157, 132 N.W.2d 209, 212 (1964). *See also State v. Gassler,* 505 N.W.2d 62 (Minn.1993)(holding it is permissible for the State to remark that a defendant has not proven a theory of defense as promised). "We have consistently approved of statements alluding to the fact that the accused has failed to produce other witnesses or evidence." *State v. Rosales,* 302 N.W.2d 804, 806 (S.D.1981). It should be noted that all the comments Lodermeier objects to were made during the State's closing argument, immediately after the judge had instructed the jury on the State's burden to prove the case beyond a reasonable doubt. Lodermeier's trial counsel, in his closing argument, made repeated reference to this standard. Therefore, any of the State's comments that may have appeared to shift the burden would have had little or no impact, given the fact that the trial court's instructions and the comments of Lodermeier's counsel were fresh in the jurors' minds. Given these facts, we cannot say that trial counsel's lack of objections during the State's closing argument constituted ineffective assistance.

### [¶ 19] D. Failure to Present Witnesses

[¶ 20] Lodermeier contends counsel was ineffective for failure to call certain witnesses. Failure to call a witness will not automatically produce ineffective assistance of counsel. *Garritsen v. Leapley,* 541 N.W.2d 89, 94 (S.D.1995). Lodermeier argues that Meryle Lodermeier, his mother, and Cleda Gerhart should have been called to testify at his trial. Counsel made a decision to call neither of these two witnesses due to credibility concerns. Moreover, much of Cleda Gerhart's alleged testimony was in the form of inadmissible hearsay and was likely to have been contradicted by her prior testimony at a grand jury hearing. Our review of the habeas proceeding denotes trial counsel had a sound basis for his decision to not call them as witnesses; counsel's trial strategy was not ineffective.

### [¶ 21] III. Vagueness

[¶ 22] In certain instances, habeas will lie to consider a challenge to the constitutionality of a statute under which a person was prosecuted. *In re Painter,* 85 S.D. 156, 158, 179 N.W.2d 12, 13 (1970)(citing *Wangsness v. McAlpine,* 47 S.D. 472, 199 N.W. 478 (1924)). Lodermeier contends SDCL 22-11-27 is unconstitutionally vague because persons of common intelligence might interpret the statute differently and law enforcement may be able to enforce the statute selectively. He also argues that because of its vagueness, jurors were "free to decide crucial issues upon their own notions of what the law should be instead of what it is," hence preventing him from receiving a fair trial. We recently reiterated:

A crime must be statutorily defined with definiteness and certainty. A statute which either forbids or requires the doing of an act in terms so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process. A criminal statute must give a person of ordinary intelligence fair notice [of what] conduct is forbidden.

*State v. Hauge,* 1996 SD 48, ¶ 12, 547 N.W.2d 173, 177 (citations and quotations omitted). SDCL 22-11-27 provides:

Any person who, without consent of the owner, intentionally alters, obliterates or removes a serial number or other identifying mark on personal property, or knowingly possesses any personal property having a serial number or identifying mark which has been intentionally obliterated, altered, or removed, which number or marking may be used to determine ownership thereof, is guilty of a Class 6 felony.

Lodermeier must overcome a strong presumption of constitutionality:

[T]he laws enacted by the legislature are [presumed] constitutional and the presumption is rebutted only when it clearly, palpably and plainly appears that the statute violates a provision of the constitution. Further, the party challenging the constitutionality of a statute bears the burden of

proving beyond a reasonable doubt that the statute violates a state or federal constitutional provision.

*Hauge,* 1996 SD 48, ¶ 4, 547 N.W.2d at 175 (citations and quotations omitted). Our review of SDCL 22–11–27 and the specific jury instructions explaining this statute do not convince us that Lodermeier has overcome his burden to show evident unconstitutional vagueness, or that he was deprived of his right to a fair trial.

### [¶ 23] IV. Res Judicata

[¶ 24] Lodermeier contends the State withheld the name of an informant who had material information which was not available on direct appeal on whether search and seizure of certain evidence was proper. He argues he was not given a full and fair opportunity to litigate his motion for new trial on this issue. *See Lodermeier,* 481 N.W.2d at 621–25. A habeas court cannot, however, review issues previously decided by this Court on direct appeal. *Miller,* 472 N.W.2d at 519. Res judicata bars the reexamination of those issues *substantially raised* in the petitioner's direct appeal. *Id.* (emphasis added). Among other subjects, the trial court found Lodermeier's arguments concerning defective indictments, the statute of limitations, search and seizure, and a motion for new trial were simply recast in this habeas action in an attempt to present additional evidence on substantially the same matters presented on direct appeal. *See Lodermeier,* 481 N.W.2d at 617–28. We agree. The issues raised here are precisely the type of assertions res judicata precludes in a habeas corpus proceeding.

### [¶ 25] V. Trial Judge's Bias

[¶ 26] Lodermeier asserts that Judge Hurd's bias during the proceedings denied him due process of law. *See Scott v. Class,* 532 N.W.2d 399, 404–05 (S.D.1995)(habeas court examined whether due process was denied because of trial court's bias). He also claims, as a part of his ineffective assistance argument, that it was error for his trial counsel to advise him to sign two waivers allowing Judge Hurd to remain on the case, despite allegations that Lodermeier had ordered the judge put on a "hit list." We shall treat these issues together in a general discussion of alleged prejudice or bias on the part of Judge Hurd and the involvement of Lodermeier's trial counsel.

[¶ 27] Foremost, we have held that "only personal bias or prejudice [by a trial judge], as distinguished from judicial predilection, constitutes a disqualifying factor." *State v. Lohnes,* 432 N.W.2d 77, 83 (S.D.1988)(citing *State v. Smith,* 242 N.W.2d 320, 324 (Iowa 1976)). This actual bias must come from an extrajudicial source, which means the judge's rulings were based on something learned other than at trial. *Lohnes,* 432 N.W.2d at 83. *Accord State v. Farni,* 325 N.W.2d 107, 110 (Iowa 1982).[6] Such bias will be judged by a reasonable person standard, *McKinley v. Iowa Dist. Court for Polk Cty.,* 542 N.W.2d 822, 827 (Iowa 1996), but a judge's decision to stay on a case will be affirmed unless there is bias or prejudice shown as a matter of law. *Lohnes,* 432 N.W.2d at 83; *State v. Shepard,* 239 Neb. 639, 477 N.W.2d 567, 571 (1991)(holding there is a heavy burden to overcome a presumption of judicial impartiality).

[¶ 28] At several points in the proceedings, Lodermeier asserts Judge Hurd evinced a bias against him. First, there was discussion during a suppression hearing about Lodermeier's propensity to deal in stolen property. We do not find actual, extraju-

---

**6.** Lodermeier also asserts that, to satisfy due process concerns, there must be not only no actual bias, but no implied bias as well. *In re Murchison,* 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955). However, the factual scenarios in the Supreme Court cases he cites are much more egregious than any bias alleged in this case. *See, e.g., Id.* (holding implied bias existed when the same judge acted both as a one-man grand jury and as the trial judge); *Taylor v. Hayes,* 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974)(a continual display of unfavorable personal attitude by the judge towards the petitioner warranted contempt sanctions against the petitioner be tried by a different judge); *Johnson v. Mississippi,* 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971)(holding trial judge was so personally opposed to the civil rights movement that he could not give the petitioner a fair trial). As such, we find this argument inapplicable and will continue to consider the rest of the facts under an actual bias standard.

dicial bias in the record, however, as the discussion centered around the Sioux Falls police officer's probable cause to search the stolen property located in Lodermeier's driveway. Further, Lodermeier complains that at a bond hearing before trial, Judge Hurd commented on the strength of the evidence presented by the State. This was also permissible discussion that does not prove bias, as SDCL 23A–43–4 provides that a factor to be considered on whether to release an accused is "the weight of the evidence against the defendant." *See also People v. Cobbs,* 443 Mich. 276, 505 N.W.2d 208, 212 (1993)(holding, "A judge's candid statement of how a case appears at an early stage of the proceedings does not prevent the judge from deciding the case in a fair and even-handed manner later, when additional facts become known").

[¶ 29] Lodermeier also asserts that allegations regarding his involvement in the disappearance of his wife and a pipe-bombing incident were relied on by Judge Hurd during sentencing. As discussed earlier, Judge Hurd did not base his sentence on information regarding Lodermeier's wife and only considered the fact that he was a "suspect" in the pipe-bombing incident as one of many factors, including Lodermeier's tampering with evidence, perjury, federal conviction, nascent plot to kill witnesses and past destruction of private property. No bias has been shown regarding these comments.

[¶ 30] Finally, Lodermeier contends the Judge's bias revealed itself when Judge Hurd mentioned the matter of his own name being on the "hit list" at sentencing. Notwithstanding that Lodermeier twice signed waivers expressly submitting to Judge Hurd's jurisdiction despite the hit list controversy, he now argues this situation created untenable bias. He believes no criminal defendant should be called upon to waive such bias, regardless of counsel's advice. Yet his trial attorney, John Schlimgen, discussed with Lodermeier the virtues of keeping Judge Hurd on the case, and decided he should remain. A person uninitiated in the criminal justice system might have some reason to complain, but Lodermeier was no novice in the courts. He had been immersed in

the system, both federal and state, for many years. We conclude these waivers constituted reasonably justifiable strategy made by an experienced trial attorney and knowingly assented to by Lodermeier. Judge Hurd's legal acumen and reputation for objectivity was widely known and respected. Wise counsel, and heedful client, would have carefully weighed the alternatives before seeking his removal.

[¶ 31] Nonetheless, Lodermeier asks us to adopt a rule requiring disqualification whenever a defendant's name may be linked with a threat against a judge presiding in the matter. This Court has not yet had the opportunity to consider such a case, although other courts have, reaching varying results. *See United States v. Cerrella,* 529 F.Supp. 1373 (S.D.Fla.1982)(holding a reasonable person would doubt the impartiality of a judge who had a death threat made against him by the defendant); *Wilks v. Israel,* 478 F.Supp. 404 (E.D.Wis.1979)(noting that a judge was not biased by an extrajudicial source even when the defendant physically attacked the judge in the courtroom); *aff'd,* 627 F.2d 32 (7th Cir.1980); *Smith v. Dist. Ct. for Fourth Judicial Dist.,* 629 P.2d 1055 (Colo.1981)(holding no bias existed in sentencing, even though the defendant threatened to kill the judge). *See also* Richard D. Tinney, J.D., *Disqualification of Judge Because Assault or Threat Against Him by Party or Person Associated With Party,* 25 A.L.R.4th 923 (1983).

[¶ 32] The 10th Circuit Court of Appeals recently considered a similar case, *United States v. Greenspan,* 26 F.3d 1001 (10th Cir. 1994), in which the FBI notified the trial judge that the defendant had taken substantial steps to carry out a threat to kill the judge or the judge's family. Given this information, the judge accelerated the sentencing phase and would not grant a continuance to defendant's counsel, even though he had been appointed only two days earlier. *Id.* at 1006. Additionally, the threat was not delivered during any proceedings in court; therefore, it was extrajudicial. These particulars, in addition to the fact that the defendant was not "judge-shopping" or manufacturing a threat to obtain a recusal, led the court to

hold that a reasonable person would believe the judge was not impartial. *Id.* at 1007.

[¶ 33] Even considering *Greenspan* as merely instructive, without embracing its holding, applying a "totality of the circumstances" approach here would not lead a reasonable person to question Judge Hurd's impartiality.[7] Judge Hurd at sentencing gave little credence to the hit list: he remarked that he believed the idea of putting his name on it was broached by Lodermeier's girlfriend, who was angry with him over a custody decision, but that the "hit" never advanced beyond mere talk. In fact, he said, "I don't believe that this defendant had any motivation [to have me killed] ... And if every time anybody had walked out of my courtroom mad enough to cause me harm, well, I suppose that is not an unusual occurrence. It goes with the territory." Judge Hurd declined to impose the maximum sentence of sixty years recommended by the State, a sentence a habitual offender such as Lodermeier could have merited. Our review of Judge Hurd's rulings exposes neither favoritism toward the State nor bias against Lodermeier. As such, we determine no due process rights were violated and, given all the circumstances, a reasonable person would not conclude Judge Hurd was biased.

## [¶ 34] VI. Joinder

[¶ 35] Joinders that affect substantial rights and result in actual prejudice may violate a defendant's right to a fair trial. *State v. Sabers,* 442 N.W.2d 259, 263 (S.D. 1989). Although the trial judge may allow the joinder of several offenses when the offenses are of the same or similar character, Lodermeier argues the charges were improperly joined, substantially affecting his fundamental rights. Habeas may be an appropriate remedy under these circumstances. *Aliberti,* 428 N.W.2d at 639; *Satter v. Solem,* 422 N.W.2d 425, 427 (S.D.1988) (*Satter II* );

*Everitt v. Solem,* 412 N.W.2d 119, 120–21 (S.D.1987); *Podoll v. Solem,* 408 N.W.2d 759, 760 (S.D.1987); *Goodroad v. Solem,* 406 N.W.2d 141, 142 (S.D.1987); *Loop v. Solem,* 398 N.W.2d 140, 143 (S.D.1986); *In re Williams,* 86 S.D. 208, 210, 193 N.W.2d 793, 794 (1972); *In re Kiser,* 83 S.D. 272, 283, 158 N.W.2d 596, 602 (1968); *State ex rel. Burns v. Erickson,* 80 S.D. 639, 645, 129 N.W.2d 712, 715 (1964); *State ex rel. Anderson v. Jameson,* 51 S.D. 540, 545, 215 N.W. 697, 699 (1927).

[¶ 36] SDCL 23A–6–23 provides:

Two or more offenses may be charged in the same indictment or information in separate counts for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Lodermeier contends the crimes for which he was ultimately convicted occurred over a seven year period and "fly in the face of what constitute 'similar crimes.' " What Lodermeier fails to appreciate is that he was not charged with the actual theft of the three pieces of property, but instead was charged with possession of stolen property and possession of property with altered serial numbers. All the acts of *possession* took place within a reasonably short period of time and all had a common link—the serial numbers were altered or removed. Lodermeier has failed to show how the trial court's joinder substantially affected his right to a fair trial. We find no error by the habeas court in denying his claim under this issue.

[¶ 37] Other issues raised by Lodermeier include police misconduct charges; an Eighth Amendment claim of improper medical care; denials of compulsory process; a denial of

---

7. The court wrote:

Although any one of these actions [the accelerated sentencing and the refusal to grant a continuance] standing alone would not provide sufficient reason to believe a judge was biased against a defendant, when considered in light of the judge's knowledge of the alleged threats against him, these factors might provide further bases for questioning the court's impartiality.

*Greenspan,* 26 F.3d at 1006.

right to a speedy trial and appeal; improper bond denial; impropriety in grand jury proceedings; and a claim the circuit presiding judge violated his due process rights. These lack sufficient merit for discussion as they are controlled by settled law.

[¶ 38] Affirmed.

[¶ 39] MILLER, C.J., and SABERS, AMUNDSON, and GILBERTSON, JJ., concur.