2004 SD 18

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**David McCRARY, Defendant and Appellant.**

No. 22701.

Supreme Court of South Dakota.

Considered on Briefs Nov. 17, 2003.

Decided Feb. 11, 2004.

Lawrence E. Long, Attorney General, Becky A. Janssen, Assistant Attorney Gen-

eral, Pierre, South Dakota, Attorneys for plaintiff And appellee.

Rena M. Atchison of Abourezk Law Firm, Rapid City, South Dakota, Attorney for defendant and appellant.

GILBERTSON, Chief Justice.

[¶ 1.] A grand jury indicted David McCrary (McCrary) on one count of Rape in the First Degree and three counts of Sexual Contact with a Child under Sixteen. Pursuant to a plea agreement, McCrary pleaded guilty to two counts of Child Abuse. The trial court sentenced McCrary to serve two consecutive ten-year sentences in the South Dakota State Penitentiary, with the second ten-year sentence suspended on several conditions. McCrary now appeals and challenges several aspects of his plea agreement and sentencing. We affirm in part, reverse in part, and remand for resentencing.

## FACTS AND PROCEDURE

[¶ 2.] In February of 1999, T.M., the mother of D.M., contacted a sexual abuse hotline in Rapid City because she believed D.M. had been sexually abused by D.M.'s father, McCrary. The hotline proceeded to contact Social Services and law enforcement. Over the next year and a half, T.M. continued to make sexual abuse allegations against McCrary concerning D.M.

[¶ 3.] In December of 2000, the State filed an abuse and neglect proceeding against both McCrary and T.M. Pursuant to this proceeding, the circuit court recommended counseling for D.M. One month later, D.M began to attend weekly or bi-weekly therapy sessions with Dr. Tom Bosworth (Dr. Bosworth). At this time, D.M. was approximately three and a half years old. Over the course of several therapy sessions and during an interview conducted by Lora Hawkins of the Child Advocacy Center of the Black Hills, D.M.

began to provide details concerning instances of sexual abuse perpetrated on her by McCrary.

[¶ 4.] On October 11, 2001, a grand jury indicted McCrary on one count of Rape in the first degree in violation of SDCL 22–22–1(1) and three counts of Sexual Contact with a Child Under Sixteen in violation of SDCL 22–22–7. McCrary pleaded Not Guilty to all charges. In the proceedings that followed, the trial court conducted numerous evidentiary hearings and heard several motions by both McCrary and the State.

[¶ 5.] Nearly a year later, on August 26, 2002, McCrary entered into a plea agreement with the State. By the terms of the agreement, McCrary pleaded guilty to two counts of felony Child Abuse contrary to SDCL 26–10–1. In exchange, the State agreed to remain silent at sentencing except for introducing a statement from the victim, D.M. On November 1, 2002, the trial court sentenced McCrary to two consecutive ten-year sentences in the South Dakota State Penitentiary. The court suspended the second ten-year sentence pending several conditions. McCrary now appeals his sentence and raises the following issues:

1. Whether the trial judge should have recused himself from sentencing.

2. Whether the State's conduct at the sentencing hearing violated the plea agreement.

3. Whether the nature of the evidence considered by the trial court at sentencing created reversible error.

4. Whether the trial court's self-initiated contact with Dr. Bosworth created reversible error.

Affirmed in part and reversed in part.

## STANDARD OF REVIEW

[¶ 6.] In *Lodermeier v. Class*, we set out the standard we utilize in reviewing claims alleging bias by a trial judge:

Foremost, we have held that "only personal bias or prejudice [by a trial judge], as distinguished from judicial predilection, constitutes a disqualifying factor." *State v. Lohnes*, 432 N.W.2d 77, 83 (S.D. 1988) (citing *State v. Smith*, 242 N.W.2d 320, 324 (Iowa 1976)). This actual bias must come from an extrajudicial source, which means the judge's rulings were based on something learned other than at trial. *Lohnes*, 432 N.W.2d at 83. *Accord State v. Farni*, 325 N.W.2d 107, 110 (Iowa 1982). Such bias will be judged by a reasonable person standard, *McKinley v. Iowa Dist. Court for Polk Cty.*, 542 N.W.2d 822, 827 (Iowa 1996), but a judge's decision to stay on a case will be affirmed unless there is bias or prejudice shown as a matter of law. *Lohnes*, 432 N.W.2d at 83; *State v. Shepard*, 239 Neb. 639, 477 N.W.2d 567, 571 (1991) (holding there is a heavy burden to overcome a presumption of judicial impartiality).

1996 SD 134, ¶ 27, 555 N.W.2d 618, 626 (footnote omitted).

[¶ 7.] We have consistently recognized the contractual nature of plea agreements, and we employ general contract principles in our review. *State v. Stevenson*, 2002 SD 120, ¶ 9, 652 N.W.2d 735, 738 (citation omitted). Therefore, "[w]hether a contract has been breached is an issue of fact for the trier of fact to resolve." *Id.* (citing *Moe v. John Deere Co.*, 516 N.W.2d 332, 335 (S.D.1994)). We review the trial court's findings of fact under the clearly erroneous standard. *City of Deadwood v. Summit, Inc.*, 2000 SD 29, ¶ 9, 607 N.W.2d 22, 25.

[¶ 8.] Trial courts enjoy wide latitude in determining the applicable sentence for a defendant. *State v. Milk*, 2000 SD 28, ¶ 10, 607 N.W.2d 14, 17 (citation omitted). In order to determine the appropriate sentence, the "sentencing court should 'acquire a thorough acquaintance with the character and history of the man before it.'" *Id.*, ¶ 16 (quoting *State v. Hinger*, 1999 SD 91, ¶ 21, 600 N.W.2d 542, 548 (citation omitted)). Therefore, we have held that sentencing courts may consider an extremely broad range of evidence in order to familiarize itself with a particular defendant. *State v. Arabie*, 2003 SD 57, ¶ 21, 663 N.W.2d 250, 257. This consideration may include "inquiry into 'uncharged conduct or even conduct that was acquitted.'" *Id.* (citing *U.S. v. Schaefer*, 291 F.3d 932, 944 (7th Cir.2002)).

## ANALYSIS AND DECISION

[¶ 9.] **1. Whether the trial judge should have recused himself from sentencing.**

[¶ 10.] For his first point of error, McCrary contends the trial court should have recused itself from the sentencing hearing. In support of his claim, McCrary argues that the court "clearly became biased towards [McCrary] throughout the proceedings," and because it heard evidence presented by the state in violation of the plea agreement. We address these claims separately.

[¶ 11.] *a. Personal Bias Towards McCrary*

[¶ 12.] McCrary believes the trial court became personally biased towards him during the proceedings, resulting in the deprivation of his due process rights at the sentencing hearing. McCrary alleges the court manifested its bias against him in several ways throughout the proceedings. After reviewing the record before us, we do not believe McCrary has overcome the presumption of judicial impartiality based upon the factual allegations contained in this issue.

[¶ 13.] To demonstrate bias, McCrary first alleges the trial court made several inappropriate "jokes" during the proceedings concerning its lack of ability to sentence McCrary to death or life imprisonment. McCrary also claims the court spoke with one Bishop Kelly regarding its belief in McCrary's guilt concerning the sexual abuse of D.M. McCrary, however, fails to cite to the record for support of his claims. As we have consistently recognized, "[t]he settled record is the sole evidence of the circuit court's proceedings, and, when confronted with an incomplete record, our presumption is that the circuit court acted properly." *State v. Jones*, 416 N.W.2d 875, 878 (S.D.1987) (citation omitted). As the party asserting error, McCrary had the burden "of ensuring an adequate record." *State v. Cates*, 2001 SD 99, ¶ 18, 632 N.W.2d 28, 36 (citation omitted). At sentencing, the trial court specifically denied making such inappropriate statements, and, furthermore, Bishop Kelly never confirmed a conversation in which the court made inappropriate comments. Because McCrary failed to support his allegations with citation to the record, we presume the trial court acted properly.

[¶ 14.] Next, McCrary believes the trial court demonstrated bias when it declined to grant a continuance due to the unavailability of two of McCrary's witnesses. McCrary fails to explain how the denial of his motion for continuance shows bias. Instead, he simply lists this as an example of the court's bias against him without laying out an argument to support this claim or citing to the settled record. We review the grant or denial of motion for continuance under the abuse of discretion standard. *State v. Schladweiler*, 436 N.W.2d 851, 853 (S.D.1989). Here, without citation to the record or an argument

of how the denial of McCrary's motion for continuance shows bias, we clearly cannot find the trial court abused its discretion.

[¶ 15.] According to McCrary, the trial court further showed his bias against him by questioning his witnesses and experts at sentencing "as though the trial court was advocate for the prosecution." Once again, McCrary fails to cite to the record in support of this claim. Furthermore, McCrary did not object to any of the court's questions. "Ordinarily an issue not raised before the trial court will not be reviewed at the appellate level." *State v. Hays*, 1999 SD 89, ¶ 16, 598 N.W.2d 200, 203. Generally, parties must object to specific court action and state the reason underlying their objection so that the circuit court has an opportunity to correct any error. *State v. Dufault*, 2001 SD 66, ¶ 7, 628 N.W.2d 755, 757; *State v. Henjum*, 1996 SD 7, ¶ 13, 542 N.W.2d 760, 763. McCrary had ample opportunity to object to the trial court's questions at sentencing, and thus did not preserve this claim for our review.[1]

[¶ 16.] For his next example of personal bias, McCrary alleges that the trial court solicited and invited ex parte communication with Dr. Janz, an expert witness. McCrary cites to Black's Law Dictionary for the proposition that "[a] judicial proceeding, order, injunction, etc., is said to be ex parte when it is taken or granted at the instance and for the benefit of one party only, and without notice to, or contestation by, any person adversely interested." BLACK'S LAW DICTIONARY 262 (2nd Pocket Ed. 2001). As to Dr. Janz, we are unable to find evidence in the record of such conduct. At the sentencing hearing, the following exchange

---

1. In addition, a review of the sentencing transcript shows that the court's questions brought out predominately positive testimony in regards to McCrary.

occurred between McCrary's counsel and Dr. Janz:

DEFENSE COUNSEL: Now, there have been a couple of telephone conversations between yourself and the Court in various aspects. If you would please just discuss what contacts you've already had with the Court.

DR. JANZ: I believe that Judge Tice made the initial referral for this last evaluation. And I believe that there was one phone call several weeks later I'm going to guess. I don't recall any more of the content. I didn't take notes on that conversation. I honestly don't recall what—what the focus of that conversation was.

Without further evidence, we fail to see how any such conversation between the court and Dr. Janz adversely affected McCrary or was initiated for the benefit of the prosecution. Indeed, Dr. Janz's testimony was generally favorable to McCrary.[2]

[¶ 17.] Finally, McCrary alleges the trial court manifested its personal bias against him when the court questioned Defense Counsel about excessive attorney fees in front of him. In his brief, McCrary attached a copy of a letter from Defense Counsel to the trial court. In the letter, Defense Counsel acknowledges that the conversation about fees occurred off the record but expresses concern that the conversation happened "within earshot and eyesight of my client." The state argues, however, that the trial court was only expressing concerns regarding excessive expert fees and not attorney's fees. At the sentencing hearing, the court addressed this concern saying:

Okay. Let me add one more thing, too. Reference was also made to the bill in this case and the Court would also note that I have made it clear to counsel for the defendant, Miss Atchison, that I was disappointed in the extent to which the hearing on hearsay and Daubert took 14 hours of court time to try, and I did in a negative way suggest that that was not something which this Court appreciated. I don't think I made any real arduous comment. But I did share with her that caused the Court some reservations.

Taken by itself, without further evidence in the record, the court's statement and Defense Counsel's letter do not establish bias as a matter of law against McCrary. *See Lodermeier,* 1996 SD 134, ¶ 27, 555 N.W.2d at 626 (bias must be established as a matter of law). We do not believe these facts and other unsupported accusations establish that the trial court was personally biased against McCrary.[3]

[¶ 18.]  *b.  Bias As a Result of Hearing Aggravating Evidence*

[14] [¶ 19.] McCrary next asserts that the sentencing court became unfairly biased against him when it received information which tended to aggravate his sentence in violation of the plea agreement. McCrary's assertion that the court heard impermissible aggravating evidence revolves around two letters attached to his brief. A social worker wrote these letters on D.M.'s behalf. According to McCrary, one of these letters was impermissible because it contained the following excerpt:

It is the author's request that Mr. McCrary receives the maximum sentence to the charges of two counts of Child Abuse to ensure that he take ad-

---

2.  At the sentencing hearing, Dr. Janz testified that he believed McCrary was treatable on an outpatient basis.

3.  For further particulars concerning the dispute over attorney's fees see: *Atchison v. Circuit Court for the Seventh Judicial Circuit,* 2004 SD 20, 676 N.W.2d 814.

vantage of services available to him in prison as well as protecting the community, other children, and achieving some justice for [D.M.].

[¶ 20.] The State argues, however, that the letter with the offending language was only a draft. Indeed, the second letter dated one day after the first does not contain the above language. At the sentencing hearing, neither party mentioned the letter(s) or objected to them. Furthermore, neither letter is contained in the official record, including the pre-sentence report. As stated above, the official record is our only evidence of the trial court's proceedings. *Jones*, 416 N.W.2d at 878. Because the letter to which McCrary objects is not contained in the official record, we must conclude that the trial court did not consider it in making its sentencing decision. *Cates*, 2001 SD 99, ¶ 18, 632 N.W.2d at 36.

[¶ 21.] In summary, we believe McCrary has failed to carry his heavy burden of showing that the trial court was biased against him as a matter of law for the matters asserted herein. In fact, almost all of McCrary's assertions are without support in the record, a situation in which we must presume the trial court acted correctly.[4] *Id.*

**[¶ 22.] 2. Whether the State's conduct at the sentencing hearing violated the plea agreement.**

[¶ 23.] For his second point of error, McCrary argues the State violated the terms of the plea agreement and, therefore, he should be re-sentenced. First, McCrary argues that the letter discussed above, written by a social worker on behalf of D.M., violated the terms of the plea agreement because it recommended a specific sentence for the defendant. However, as we have already recognized, this letter is not part of the official record, including the pre-sentence report. Neither party mentioned or objected to the letter at sentencing. Accordingly, we presume the trial court did not consider this letter in its sentencing decision. *Id.*

[¶ 24.] Next, McCrary points out that at a hearing prior to sentencing the State indicated it intended to call D.M.'s foster parent to testify as well as making a statement itself. That McCrary would even argue this on appeal is dubious because the State never actually called the foster parent or presented a statement at sentencing. Thus, it is without merit and need not be addressed.

[¶ 25.] Third, McCrary contends the state violated the terms of the plea

---

4. Counsel for McCrary makes many serious accusations against the trial court. None are supported by citation to the record. We have clearly condemned this most serious type of appellate omission. *Hofmeister v. Sparks*, 2003 SD 35, 660 N.W.2d 637 n. 3. In its brief, the State repeatedly pointed out this lack of citation to the record by McCrary. If these crucial omissions were inadvertent, McCrary had the opportunity to correct this flaw in his reply brief. Yet McCrary failed to file a reply brief although he had the full right to do so. Absent this, there remain two possibilities as to the source of the accusations. The first is that counsel failed to develop the record to provide evidentiary support for the accusations against Judge Tice. *In re Disci-*

*pline of Dorothy*, 2000 SD 23, ¶ 42, 605 N.W.2d 493, 505. The second is that there is no evidentiary support for the accusations. In *In re Discipline of Eicher*, 2003 SD 40, ¶ 27, 661 N.W.2d 354, 363, we cautioned " 'the efficient and orderly administration of justice cannot be successfully carried on if we allow attorneys to engage in unwarranted attacks on the court [or] opposing counsel ... Such tactics seriously lower the public respect for ... the Bar.' " (citing *In re Converse*, 258 Neb. 159, 602 N.W.2d 500, 508 (1999)). *See also Dorothy*, 2000 SD 23, ¶¶ 47–48, 605 N.W.2d at 507–508. As this is a criminal appeal, a determination of the basis for a lack of citations to the record is beyond the scope of this proceeding.

agreement when it cross-examined defense witnesses at sentencing. Whether or not the State violated the plea agreement when it cross-examined defense witnesses is a question of fact. *Stevenson*, 2002 SD 120, ¶ 9, 652 N.W.2d at 738. The trial court found this cross-examination did not violate the terms of the plea agreement, and we review this decision under the clearly erroneous standard. *City of Deadwood*, 2000 SD 29, ¶ 9, 607 N.W.2d at 25.

[¶ 26.] At sentencing, the following relevant exchange occurred:

THE COURT: Question is you're going to be calling witnesses and the State has indicated and I would anticipate as a matter of course typically the State would be expected to cross-examine witnesses for the purpose of bringing out evidence that might be—shed light on the direct testimony of that witness. What's your position on that?

DEFENSE COUNSEL: Well, your Honor, if I don't go into specific areas with that witness, I would expect that those areas could not be touched upon at all.

THE COURT: The rules of evidence would be applicable. That's, of course, a very subjective area and so I can't tell you what would or would not open doors.

DEFENSE COUNSEL: Understood, Your Honor.

THE COURT: Okay. Does that meet both counsels' understanding of the plea agreement and the process?

DEFENSE COUNSEL: As long as there is no form of presenting information in aggravation, Your Honor, I believe that we are complying. However, to me remaining silent means that the State was to remain silent throughout. I believe that cross-examination should not even be permitted. However, I un-derstand that that's what this Court is directing and—

THE COURT: I would say that typically that would be—as long as it's not done in an aggravation process but done for clarification of evidence presented. And that's a very touchy area for the State to walk in, but I trust we can track those directions.

From this exchange, it is clear the trial court interpreted the plea bargain as allowing the State to cross-examine McCrary's witnesses only to the extent of the areas covered by the defense. Although defense counsel expressed some initial reservations with this interpretation, she clearly did not formally object to the interpretation. Thereafter, she fully participated in the evidentiary portion of the hearing that preceded sentencing. McCrary did not object to any of the specific questions asked by the State during cross-examination, a fact which suggests defense counsel did not believe the State had overstepped the boundaries set by the trial court. Given the record before us, and considering McCrary's failure to specifically object to this interpretation, we do not believe the trial court abused its discretion by allowing the State to cross-examine McCrary's witnesses.

[¶ 27.] **3. Whether the nature of the evidence considered by the trial court at sentencing created reversible error.**

[17] [¶ 28.] McCrary asserts his sentence should be reversed because the trial court relied upon unreliable evidence in determining his sentence. Specifically, McCrary believes that the trial court impermissibly considered evidence of his sexual abuse of D.M. as well as B.M., his stepsister, when it sentenced him to two ten-year sentences in the South Dakota State Penitentiary for felony child abuse.

[¶ 29.] We have continuously recognized the wide discretion of sentencing

courts. *Milk,* 2000 SD 28, ¶ 10, 607 N.W.2d at 17. In *Arabie,* we stated:

> In determining the type and extent of punishment to be imposed, the sentencing judge may exercise wide discretion with respect to the type of information used as well as its source. He should have full access to the fullest information possible concerning the defendant's life and characteristics. Information which should be available to the court includes general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record[.]
>
> It is obvious from these and other decisions that the sentencing judge is vested with the authority and burdened with the responsibility to inquire into the various aspects of each defendant's case before sentence is pronounced.

2003 SD 57, ¶ 21, 663 N.W.2d at 257 (citation omitted). This relevant information may include "uncharged conduct or even conduct that was acquitted." *Id.* (citation omitted).

[¶ 30.] Here, after being indicted on Rape in the First Degree and three counts of Sexual Contact with a Child Under Sixteen, McCrary pleaded guilty to two counts of felony Child Abuse in violation of SDCL 26–10–1. During the proceedings, the trial court heard evidence that McCrary had sexually abused his daughter, D.M., as well as testimony from B.M., McCrary's step-sister, that he had sexually abused her several years ago when she was a child. McCrary disputed this testimony and, except for the ex-parte communication addressed in Issue Four, had the opportunity to present evidence to counter these allegations of sexual abuse. During this time, the trial court had the opportunity to evaluate and gauge the relative credibility of each witness. Subject to our hold-

ing in Issue Four, we conclude the balance of this issue is affirmed.

[¶ 31.] **4. Whether the trial court's self-initiated contact with Dr. Bosworth created reversible error.**

[¶ 32.] At sentencing the trial court made the following statement:

> I took it upon myself to call Mr. Bosworth [the victim's therapist] and ask him one question and that was whether or not he had reason to believe . . . that the child was not molested by the father and his answer was no.

Any contact by the trial court with a witness or potential witness other than for scheduling or merely procedural matters should be accompanied with full due process protection for both parties such as advance notice and an opportunity to be heard SDCL ch. 16–2. Code of Judicial conduct, Canon 3B(7). "A judge must not independently investigate the facts in a case." Canon 3B(7)(a) cmt. Clearly this prohibition was not followed in this case and we need not ponder the effect of this ex parte contact. In *O'Connor v. Leapley,* 488 N.W.2d 421, 423 (S.D.1992) we held that "[i]f an ex parte communication is invited or initiated by the judge, no prejudice needs to be shown . . . Prejudice is implicit in the judge's invitation or initiation of an improper ex parte communication." (citing *State v. Barker,* 227 Neb. 842, 420 N.W.2d 695, 699 (1988)).

[¶ 33.] The roles of the various participants in the judicial process are well defined by the judicial canons and the attorney's rules of professional responsibility. A judge simply cannot be both a judge and a prosecutor searching out facts favorable to the state without abandoning his or her judicial neutrality. By initiating communication with Dr. Bosworth, that is what happened in this case.

## CONCLUSION

[¶ 34.] We affirm Issues One, Two and Three and reverse and remand to the Seventh Judicial Circuit on Issue Four for re-sentencing by a different judge.

[¶ 35.] SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices concur.