1996 SD 30

**STATE of South Dakota, Plaintiff and Appellant,**

v.

**David Gordon BECK, Defendant and Appellee.**

No. 19246.

Supreme Court of South Dakota.

Considered on Briefs Feb. 13, 1996.

Decided March 27, 1996.

**812**

Mark W. Barnett, Atty. Gen., John M. Strohman, Asst. Atty. Gen., Pierre, for plaintiff and appellant.

Kevin L. Reiner, James and Reiner, Yankton, for defendant and appellee.

MILLER, Chief Justice.

[¶ 1] David Gordon Beck, a prisoner at the Springfield Correctional Facility, alleged that his prosecution for possession of marijuana by an inmate, following the imposition of prison discipline for the same conduct, violated the double jeopardy protections of the state and federal constitutions. The trial court agreed and dismissed the information. State appeals. We reverse and remand.

## FACTS

[¶ 2] Beck is a prisoner at the Springfield Correctional Facility, serving time for a conviction of aggravated assault. Based on a tip by a confidential informant, prison and law enforcement officials searched his person and prison cell and found three cigarettes on Beck's person. Chemical analysis indicated the cigarettes contained marijuana.

[¶ 3] As part of the prison disciplinary process, Beck received a form entitled "Notice of Violation of Prohibited Act." The form indicated he had been reported for use or possession of marijuana, a violation of prison rules and also stated that a hearing regarding the alleged violation had been scheduled. Beck marked the following response on the notice form: "I desire to plead: guilty. I waive my right to an adverse hearing and accept the penalty of: 90 days punitive segregation and 90 days loss of good time which I understand will be imposed upon me as soon as possible after I have returned this portion of the Notice to the Disciplinary Office." Beck signed and dated the form on the same day as the search of his cell. He spent 93 days in punitive segregation and lost 90 days of good time as a result of the violation of prison rules. Beck was also transferred to a higher security facility and became ineligible for trustee status.

[¶ 4] Some weeks later, the State charged Beck with a violation of SDCL 24-2-14(1), possession of marijuana by an inmate. State also alleged he was an habitual offender. Beck filed a motion to dismiss the charges claiming the prosecution for possession of marijuana by an inmate, in addition to the prison disciplinary action, violated the Double Jeopardy Clause of the United States and South Dakota Constitutions. The trial court agreed, reasoning punitive segregation and loss of good time credits constituted punishment for Beck's marijuana violation; a subsequent criminal prosecution for the same conduct would be a second punishment for the same offense in violation of double jeopardy guarantees.

## ISSUE

[¶ 5] **Did the trial court err in holding that prison discipline, including punitive segregation and loss of good time, constitutes punishment for purposes of double jeopardy so that a subsequent criminal prosecution for the same conduct is prohibited by the Double Jeopardy Clause of the United States and South Dakota Constitutions?**

## STANDARD OF REVIEW

[¶ 6] This case calls for an analysis of the double jeopardy protections contained in the state and federal constitutions. Constitutional interpretation is a question of law which is reviewable de novo. *Poppen v. Walker,* 520 N.W.2d 238, 241 (S.D.1994). Accordingly, we give no deference to the conclusions of the trial court. *Id.*

## DECISION

[¶ 7] The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution reads: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S.Const. Amend. V. This provision is applicable to the states through the Fourteenth Amendment to the United States Constitution. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664 (1969) (citing *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)), *overruled on other grounds, Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). Our state constitution also prohibits

double jeopardy: "No person shall ... be twice put in jeopardy for the same offense." S.D.Const. Art. VI, § 9.

■ [¶ 8] The Double Jeopardy Clause guards against three governmental abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487, 496 (1989) (*Pearce,* 395 U.S. at 717, 89 S.Ct. at 2076, 23 L.Ed.2d 656 (1969)).

[¶ 9] This case concerns the prohibition against multiple punishments for the same offense. In *State v. Weekley,* 90 S.D. 192, 195, 240 N.W.2d 80, 84 (1976), we held the Double Jeopardy Clause was not violated when a defendant was subjected to prison discipline for escaping from the institution and then criminally prosecuted for the same conduct. We wrote:

> [T]he purpose of the double jeopardy clause is to require that a person be subject only once to a criminal proceeding that may result in criminal punishment designed to vindicate public justice. *We do not consider administrative discipline imposed by penitentiary officials as constituting that type of proceeding.* The administrative discipline imposed by penitentiary officials is designed to serve purposes essential to the orderly administration of the penitentiary. A formal criminal prosecution by the state on a charge of escape, together with the attendant publicity and potentially severe punishment, is designed to vindicate the vital interest that the citizens of this state have in enforcing the law which imposes a sanction for escaping from the penitentiary. True, some of the purposes of the two types of proceedings may overlap, e.g., the deterrent effect the administrative and penal sanctions imposed may have upon others who are contemplating escape; however, other purposes served by the action taken by penitentiary officials, e.g., the necessity of promptly confining a returned escapee in order to maintain security within the institution, may be different from the purposes served by the prosecution on the charge of escape brought in the name of the state. Although appellant argues that the deprivation of liberty resulting from his being confined in isolation did not secure the objectives of preserving order, preventing escape, or rehabilitating an escapee, that is a question committed to the considered judgment of those officials charged with the responsibility of operating the penitentiary. It is for those officials, possessing expertise with respect to the maintenance of order, morale and discipline within a penal institution, to decide whether or not the imposition of administrative sanctions upon a returned escapee is necessary or desirable to further the objectives of maintaining an orderly institution.

90 S.D. at 195–96, 240 N.W.2d at 82–3 (emphasis supplied).

[¶ 10] *Weekley* would appear to resolve the issue presented here. However, the trial court concluded that a subsequent decision by the United States Supreme Court, *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), mandates a different result. In *Halper,* Irwin Halper had submitted sixty-five separate false claims for Medicare reimbursement, resulting in an overpayment of $585 by the federal government. The United States indicted Halper on sixty-five counts of violating the criminal false-claims statute and he was convicted on all counts. He was also convicted of mail fraud. He received a two-year prison sentence and a fine of $5,000. The United States then brought an action against Halper under the civil False Claims Act, 31 U.S.C. §§ 3729–31, under which a single false claim could result in a civil penalty of $2,000 payable to the government. Because Halper had violated the Act sixty-five times, he could be subjected to a statutory penalty of $130,-000. The district court declined to award this figure, concluding the $2000–per–count penalty, coupled with the previous conviction and sentence, would violate the constitutional prohibition against multiple punishments. Instead, the district court limited the govern-

ment's recovery to double damages of $1170 and the costs of the civil action.

[¶ 11] On appeal, the United States Supreme Court framed the issue as "whether the statutory penalty authorized by the civil False Claims Act, under which Halper is subject to liability of $130,000 for false claims amounting to $585, constitutes a second 'punishment' for the purpose of double jeopardy analysis." 490 U.S. at 441, 109 S.Ct. at 1898, 104 L.Ed.2d at 497. The Court set forth a test for determining the punitive character of civil proceedings:

> [A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment[.] ... We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.

490 U.S. at 448–49, 109 S.Ct. at 1902, 104 L.Ed.2d at 502.

[¶ 12] The Court reasoned that a civil penalty, which is "overwhelmingly disproportionate" to the damages caused by the defendant, loses its remedial character and constitutes punishment for purposes of double jeopardy. 490 U.S. at 449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502. The Court wrote:

> Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as "punishment" in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment.

490 U.S. at 449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502. The Court remanded the case to the district court to determine what portion of the statutory penalty could be sustained as compensation for the government's actual damages.

[¶ 13] In applying the *Halper* analysis to Beck's case, the trial court emphasized the punitive aspects of prison discipline, concluding:

> The facts in this case, where the Defendant spent 90 days in punitive segregation and lost 90 days of good time for the possession of less than one ounce of marijuana clearly reveals that the administrative sanction and remedies imposed served the purpose of punishment, retribution and deterrence, sufficient to invoke the double jeopardy clause of the United States Constitution and the Constitution of the State of South Dakota.... To subsequently charge the Defendant, David Gordon Beck with a criminal complaint or information for possession of marijuana by a prison inmate, after the Defendant, David Gordon Beck had already received the administrative sanction or penalty of 90 days punitive segregation and 90 days loss of good time constitutes a violation of the double jeopardy clause of the United States Constitution and the South Dakota Constitution.

[¶ 14] We disagree with the trial court's conclusions. In our view the *Halper* analysis has little application outside of the context of civil monetary judgments. In fact, the *Halper* court specifically limited the reach of its holding:

> What we announce now is *a rule for the rare case*, the case such as the one before us, *where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused.*

490 U.S. at 449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502 (emphasis supplied).

[¶ 15] Further, in a later case, the Court reemphasized the narrow applicability of the *Halper* test. In *Dep't of Revenue of Montana v. Kurth Ranch*, 511 U.S. ——, ——,114 S.Ct. 1937, 1941, 128 L.Ed.2d 767, 772–73 (1994), the Court considered "whether a tax on the possession of illegal drugs assessed after the State has imposed a criminal penalty for the same conduct may violate the constitutional prohibition against successive punishments for the same offense." Although the Court invalidated the tax as an impermissible second punishment for drug

offenders, the Court reasoned that *Halper's* test for civil penalties was inapplicable:

> [T]ax statutes serve a purpose quite different from civil penalties, and *Halper's* method of determining whether the exaction was remedial or punitive "simply does not work in the case of a tax statute."

511 U.S. at ——, 114 S.Ct. at 1948, 128 L.Ed.2d at 781.

[¶ 16] The Court noted that other presumptively valid taxes on alcohol and cigarettes include a deterrent purpose and that such a motive was not necessarily fatal to the validity of a taxing scheme under double jeopardy analysis. 511 U.S. at ——, 114 S.Ct. at 1946, 128 L.Ed.2d at 779 ("[N]either a high rate of taxation nor an obvious deterrent purpose automatically marks this tax a form of punishment.").

[¶ 17] Significantly, other jurisdictions have rejected the *Halper* test when determining whether prison discipline equals punishment for double jeopardy purposes. As the Seventh Circuit Court of Appeals aptly observed:

> Historically, we have deferred to the expertise of prison authorities regarding questions of prison administration and discipline. We cannot conclude that the Court intended its ruling in *Halper* to alter this tradition by subjecting prison disciplinary actions to constitutional scrutiny in every case involving a subsequent criminal prosecution. Nor do we believe that the Court intended to bar those criminal prosecutions.... [T]he reasoning and motives behind *Halper* [do not] fit the prison context. This [c]ourt cannot depart from a rule uniformly established by federal and state courts simply because dicta in a Supreme Court opinion dealing with facts and issues wholly unrelated to the present dispute, could be read to require a different result.

*Garrity v. Fiedler,* 41 F.3d 1150, 1153 (7th Cir.1994) (citations and quotations omitted), *cert. denied,* —— U.S. ——, 115 S.Ct. 1420, 131 L.Ed.2d 303 (1995).

[¶ 18] Likewise, the Ninth Circuit Court of Appeals wrote:

> We note at the outset that *Halper* did not involve a prison disciplinary proceeding. This distinction is critical.... [A]s a practical matter applying the prohibition against double jeopardy to prison disciplinary proceedings would effectively compel the government to choose between remedial and punitive goals. Seeking disciplinary sanctions and criminal penalties in a single proceeding is not feasible: [t]he difficulties and delay that a criminal prosecution entails would leave the prisoners who violated the prison rules without a prompt resolution of charges and hinder prison administration and discipline. If prison authorities waited until prosecutors decided whether to bring charges and criminal proceedings were completed, the offending inmate might remain in the prison as a threat to institutional order for an extended period. If, on the other hand, prison authorities acted to maintain order by promptly sanctioning the inmate, criminal prosecution would be barred.

*United States v. Brown,* 59 F.3d 102, 104 (9th Cir.1995) (citations and quotations omitted).

[¶ 19] Even were we to conclude that the *Halper* test applies in this case, no double jeopardy violation is present. *Halper* invalidated a civil sanction that could not "fairly be characterized as remedial, but only as a deterrent or retribution." 490 U.S. at 449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502. Here, prison discipline allows correction authorities to achieve a valid remedial goal—the maintenance of prison security and order. *Garrity,* 41 F.3d at 1153; *United States v. Newby,* 11 F.3d 1143, 1145 (3rd Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 111, 130 L.Ed.2d 58 (1994). Furthermore, "the adoption and execution of policies and practices necessary to preserve internal order and discipline, and to maintain institutional security in the prison are 'peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response, courts should ordinarily defer to their expert judgment in such matters.'" *Newby,* 11 F.3d at 1146 (quoting *Bell v. Wolfish,* 441

U.S. 520, 548, 99 S.Ct. 1861, 1878–79, 60 L.Ed.2d 447 (1979)).

[¶ 20] With this rule of deference in mind, we now consider whether any of the disciplinary sanctions imposed on Beck "are so grossly unrelated to prison authorities' remedial goal as to constitute 'punishment' within the meaning of the Double Jeopardy Clause." *Newby*, 11 F.3d at 1145. As a preliminary matter, we note punishment for double jeopardy purposes does not arise simply because the terms "penalty" and "punitive" segregation were used to describe the prison sanctions. "Labels do not control in a double jeopardy inquiry." *State v. Walker*, 35 Conn.App. 431, 646 A.2d 209, 211 (1994) (citing *Halper*, 490 U.S. at 448, 109 S.Ct. at 1901–02, 104 L.Ed.2d at 501), *cert. denied*, 231 Conn. 916, 648 A.2d 159 (1994). "[T]he fact that the sanction was labeled punitive does not make it so; rather we must make a particularized assessment of what purpose the penalty may fairly be said to serve." *Id.* (citing *Halper*, 490 U.S. at 448, 109 S.Ct. at 1901–02, 104 L.Ed.2d at 501). Here, the sanctions imposed served the remedial goal of maintaining prison order and discipline. Placing Beck in punitive segregation restricted his access to other inmates and visitors who might have been supplying him with illegal drugs. It also likely discouraged Beck and other inmates from repeating the same conduct. Although *Halper* regards deterrence as indicative of punishment, this interpretation does not apply in the prison context; promoting compliance with prison rules is directly related to the government's remedial goal of maintaining order and security. *Brown*, 59 F.3d at 105. "Punitive interests and remedial interests ... are nowhere so tightly intertwined as in the prison setting, where the government's remedial interest is to maintain order and to prevent violent altercations among a population of criminals. Accordingly, the mere fact that a sanction imposed by prison officials has a punitive component does not mean that the sanction constitutes 'punishment' for double jeopardy purposes." *United States v. Hernandez–Fundora*, 58 F.3d 802, 806 (2nd Cir.1995), *cert. denied*, —— U.S. ——, 115 S.Ct. 2288, 132 L.Ed.2d 290 (1995).

[¶ 21] Nor was the loss of good time "divorced from [the] remedial goal" of maintaining discipline in prison. *See, e.g., Halper*, 490 U.S. at 443, 109 S.Ct. at 1899, 104 L.Ed.2d at 498. "Good time credits are granted to reward good behavior and they are conditioned upon continuing good behavior. The authorities' ability to revoke them is designed to encourage the inmates to continue their good conduct and, thus, is rationally related to the remedial goal." *Newby*, 11 F.3d at 1145. Furthermore, loss of good time is not a punishment for the crime of marijuana possession, it is an integral part of Beck's single punishment for aggravated assault. *See Brown*, 59 F.3d at 105. "[C]ompliance with the conditions for awarding good time credit is one of the terms of the original sentence." *Id.*

[¶ 22] As to Beck's transfer to a higher security prison, " '[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.' " *Id.* (quoting *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976)). A change in the place of an inmate's confinement based on a determination that his misconduct requires the transfer does not alter the original sentence nor does it bar criminal prosecution for the misconduct. *Id.* Finally, removing Beck's eligibility for trustee status following a violation of prison rules was in keeping with the need to maintain security and encourage compliance with prison rules.

[¶ 23] In sum, placing Beck in punitive segregation, removing good time credits and trustee eligibility, and transferring him to another facility was directly related to the need for maintaining order and discipline and therefore did not constitute punishment for double jeopardy purposes. *See Brown*, 59 F.3d at 105–06; *Hernandez–Fundora*, 58 F.3d at 807. More generally, it would be bizarre indeed if we permitted prison officials to impose disciplinary sanctions for minor infractions of prison rules while restricting their ability to address more reprehensible criminal conduct. *See id.*

[¶ 24] We therefore hold that an inmate may be disciplined for misconduct and may also be criminally prosecuted for the same conduct, so long as the disciplinary sanctions are not grossly disproportionate to the government's interest in maintaining prison order and discipline. *Id. Accord, Brown,* 59 F.3d at 105; 58 F.3d at 807; *Garrity,* 41 F.3d at 1152; *Newby,* 11 F.3d at 1146; *United States v. Rising,* 867 F.2d 1255, 1259 (10th Cir.1989); *Coleman v. State,* 642 So.2d 532, 533–34 (Ala.Crim.App.1994); *People v. Watson,* 892 P.2d 388, 390 (Colo.Ct.App. 1994); *Walker,* 646 A.2d at 212; *State v. Mullins,* 647 N.E.2d 676, 678 (Ind.Ct.App. 1995); *State v. Lynch,* 248 Neb. 234, 533 N.W.2d 905, 911 (1995); *Hernandez v. State,* 904 S.W.2d 808, 813 (Tex.App.1995); *Wild v. Commonwealth,* 18 Va.App. 716, 446 S.E.2d 626, 627 (1994); *State v. Fonder,* 162 Wis.2d 591, 469 N.W.2d 922, 926 (App.1991), *review denied,* 475 N.W.2d 164 (Wis.1991), *cert. denied,* 502 U.S. 993, 112 S.Ct. 614, 116 L.Ed.2d 636 (1991).

[¶ 25] Reversed and remanded.

[¶ 26] SABERS, AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.