2000 SD 93

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Jason Todd AUGUSTINE, Defendant and Appellant.**

No. 21154.

Supreme Court of South Dakota.

Considered on Briefs May 30, 2000.

Decided July 19, 2000.

Mark Barnett, Attorney General, Frank Geaghan, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Ramon A. Roubideaux, Rapid City, South Dakota, Attorney for defendant and appellant.

MILLER, Chief Justice.

[¶ 1.] Jason Augustine appeals his conviction on four separate counts of child abuse, claiming (1) that such conviction violated his constitutional right against double jeopardy and (2) that there was insufficient evidence to sustain the jury's verdict. We affirm.

**FACTS**

[¶ 2.] On October 20, 1998, daycare workers noticed what appeared to be cigarette burn marks on 4-year-old female M.A.'s ankle, forehead, fingers and toe. They contacted the police and the Department of Social Services to investigate. M.A. was taken to the emergency room of a local hospital, where she told the examining pediatrician that there were cigarette burns on her body. After studying the injuries, the doctor confirmed them to be consistent with cigarette burns.

[¶ 3.] M.A.'s father, Jason Augustine, was twice interviewed by the police re-

garding her injuries. At the first interview, he denied any responsibility for the injuries. However, during the second interview, which was videotaped, he admitted to using a cigarette to burn M.A. on several different occasions.

[¶ 4.] Regarding the burns to M.A.'s ankle, Augustine told police that he came home during the early morning hours of October 4, 1998, in an intoxicated state after celebrating his birthday. According to Augustine, while he was sitting on the couch, M.A. awoke, came downstairs and joined him. He told her to go to bed, but she would not, so he reached out to push her away by touching her on the ankle with his cigarette. He recalled seeing sparks fly from the end of the cigarette when it came into contact with her ankle. After being burned once with the cigarette, M.A. would still not go to bed, so Augustine said he burned her a second time on the ankle. After the second burn, he stated that M.A. ran upstairs and he passed out.

[¶ 5.] Augustine further told the police that he inflicted the forehead injury on another occasion at his sister's house, although he could not remember the exact date. He stated that he had been drinking, and when M.A. misbehaved, he touched her with his cigarette.

[¶ 6.] The burns to M.A.'s fingers, Augustine told police, were inflicted while he was babysitting M.A. and his other children at home and his wife was at work. According to Augustine, M.A. pushed her sibling, then threw a ball inside the house, which knocked over some CD's. This angered him, so he burned her on the fingers with his cigarette.

[¶ 7.] Augustine also admitted inflicting the injury to M.A.'s toe. He said that particular injury happened at home when M.A. was misbehaving and kicking him. He said he lost his patience and burned her with his cigarette "in an instant."

[¶ 8.] In the interview Augustine claimed that each time he burned M.A., he was under the influence of alcohol and was experiencing significant stress in his life stemming from arguments with his wife, misbehaving children, and lack of a job. Therefore, he explained that when he became frustrated with M.A.'s misbehavior, he reacted by burning her with a cigarette.

[¶ 9.] Augustine was subsequently charged with four counts of child abuse for the burns to each different body part: Count I related to burns on M.A.'s ankle, Count II pertained to a burn on her forehead, Count III originated from burns on her fingers, and Count IV related to a burn on her toe. A jury trial was held on May 12–13, 1999, during which he was convicted on all four counts. He appeals, raising two issues:

1. Did the State's use of the same evidence to support the convictions in all of the counts violate his constitutional right against double jeopardy?

2. Was the evidence presented at trial sufficient to sustain the jury verdicts?

## DECISION

[¶ 10.] 1. **Augustine's constitutional right against double jeopardy was not violated by his conviction on four separate counts of child abuse.**

[¶ 11.] The Fifth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, and Article VI, § 9 of the South Dakota Constitution, provide that no person shall be put into jeopardy twice for the same offense. The double jeopardy clause has been used to guard against three types of governmental abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *State v. Beck*, 1996 SD 30, ¶ 8, 545 N.W.2d 811, 813; *State v. Grey Owl*, 316 N.W.2d 801, 803 (S.D.1982).

[¶ 12.] Augustine was convicted on four separate counts of abuse or cruelty to a

minor in violation of SDCL 26–10–1, which provides: "Any person who abuses, exposes, tortures, torments, or cruelly punishes a minor in a manner which does not constitute aggravated assault, is guilty of a Class 4 felony." He argues that because the sole distinction between each count was the part of the body injured, the actions "should have been considered a course of conduct which, when combined, resulted in one criminal offense instead of four separate criminal offenses." We disagree.

■ [¶ 13.] We have adopted the "same offense" or "same evidence" test when examining claims of double jeopardy. *State v. Darby*, 1996 SD 127, ¶ 16, 556 N.W.2d 311, 317; *State v. Shilvock–Havird*, 472 N.W.2d 773, 778 (S.D.1991); *State v. Hoffman*, 430 N.W.2d 910, 911 (S.D.1988); *State v. Seidschlaw*, 304 N.W.2d 102, 106 (S.D.1981); *State v. Pickering*, 88 S.D. 548, 553–54, 225 N.W.2d 98, 100–01 (1975). The test is whether " '[t]he same act or transaction may constitute two distinct offenses ... if each offense as defined by statute requires the proof of some fact or element not required to establish the other.' " *Seidschlaw*, 304 N.W.2d at 106 (quoting *State v. Teutsch*, 80 S.D. 462, 468, 126 N.W.2d 112, 115 (1964)).

[¶ 14.] The "same evidence" test originated from the United States Supreme Court's decision in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). There the petitioner was convicted on two violations of the same provision in the Harrison Narcotics Act for selling a drug to the same person on two occasions. In connection with one of those sales, he was also convicted under another provision of the act for selling the drug without a written order. He claimed on appeal that (1) the first two convictions constituted a single offense because they were made to the same purchaser within a brief period of time, and (2) the second and third convictions constituted a single offense because they stemmed from the same transaction.

[¶ 15.] The Supreme Court affirmed all three convictions. Addressing the petitioner's first issue, which is analogous to the instant case, the Court characterized the two violations of the same statute as isolated transactions, rather than one continuous transaction. It explained the distinction:

> "[W]hen the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie. [ ... ] The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately.... If the latter, there can be but one penalty."

*Blockburger*, 284 U.S. at 302, 52 S.Ct. at 181, 76 L.Ed. at 308 (quoting Wharton's Criminal Law § 34 (11th Ed.)).

[¶ 16.] The Court reasoned that since the first sale had been completed, the second sale, even though close in time to the first, was "not the result of the original impulse, but of a fresh one—that is to say, of a new bargain." *Id.* at 303, 52 S.Ct. at 181, 76 L.Ed. at 309. In support of its position, the Court cited *Ebeling v. Morgan*, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915), wherein it upheld the defendant's multiple convictions for cutting into numerous mailbags, rejecting his contention that his actions constituted one offense.

[¶ 17.] Regarding Blockburger's second issue, the Court held that "where the same act [ ] constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304, 52 S.Ct. at 182, 76 L.Ed. at 309 (citation omitted). It therefore affirmed both convictions for different statutory violations, even though they originated from the same transaction.

[¶ 18.] The above-quoted phrase has been subsequently applied by this Court to cases involving one transaction which results in different statutory violations, *Darby*, 1996 SD 127, ¶¶ 14–20; 556 N.W.2d at 317–18; *Shilvock–Havird*, 472 N.W.2d at 777–78; *State v. Groves*, 473 N.W.2d 456 (S.D.1991); *State v. Michalek*, 407 N.W.2d 815 (S.D.1987); *State v. Simons*, 313 N.W.2d 465 (S.D.1981); *Pickering*, 88 S.D. at 553–554, 225 N.W.2d at 101; and to cases involving one statute for which there have been multiple violations, as in the present case. *State v. Sprik*, 520 N.W.2d 595 (S.D.1994); *Hoffman*, 430 N.W.2d at 911; *State v. Waller*, 338 N.W.2d 288 (S.D. 1983); *Seidschlaw*, 304 N.W.2d at 106.

[¶ 19.] In *Seidschlaw*, we upheld the defendant's conviction on two counts of first-degree manslaughter in connection with the deaths of two people whom he had hit while eluding police. In holding that double jeopardy did not attach, we concluded that although each conviction was for a violation of the same statute, the death of the particular victim named in each count was a fact the proof of which was required for that but not the other count. 304 N.W.2d at 106. We applied similar reasoning in *Waller*, where we affirmed the defendant's conviction on two counts of intentional damage to property for damage sustained both to a car the defendant was driving and the building he drove it into. 338 N.W.2d at 292–93.

[¶ 20.] In *Hoffman*, the defendant's convictions on four separate and specific counts of child abuse were upheld, but his convictions on two general allegations of torment were overturned as violative of double jeopardy. The evidence showed that the defendant struck one of his step-children's head against a truck and that he hit the same child in the face with his fist. Further evidence showed that the defendant struck a second step-child on the head with a bar or rod and that he pulled hair out of the child's head. We stated, "[t]o support a conviction on six counts originating from this statute [the same child abuse statute at issue here], there must be a separate factual basis for each count." 430 N.W.2d at 911. Finding no separate factual bases to support the torment claims, we reversed.

[¶ 21.] Finally, in *Sprik*, we held that the defendant could be charged with multiple counts of rape for a single incident that involved multiple instances of penetration. We surmised that to hold otherwise "would be to hold that a defendant can perform as many acts of penetration as possible during a sexual encounter or transaction and be subject to punishment for only one act of penetration." 520 N.W.2d at 598.

[¶ 22.] In comparing the present case to those previously decided, we find no violation of Augustine's right against double jeopardy. Each count, by specifying a burn to a separate and distinct part of M.A.'s body, alleged acts of isolated, separate impulses. *Blockburger*, 284 U.S. at 302, 52 S.Ct. at 181, 76 L.Ed. at 308. Therefore, although identical in law, each count was different in fact.

[¶ 23.] Moreover, the evidence showed that the crimes did not occur simultaneously. According to Augustine's video-taped confession, at least three of the crimes occurred at different times in October 1998, and at least one occurred in a different location. The photographs of the burns, taken on October 20, 1998, show the injuries in different phases of the healing process. While the pictures cannot be a conclusive determinant of exactly when the injuries were inflicted, they could be an indication that such injuries were not simultaneous.

[¶ 24.] Each time an adult abuses a child, it is a separate, isolated impulse; not an inherently continuous offense. Individual acts of child abuse, especially when not shown to be inflicted simultaneously, constitute successive violations of SDCL 26–10–1, therefore, Augustine's right against double jeopardy was not violated by his conviction on four separate counts of that statute.

**[¶ 25.] 2. The evidence was sufficient to sustain the jury's verdict against Augustine.**

[¶ 26.] Our standard of review for determining the sufficiency of evidence is well settled:

> In determining the sufficiency of the evidence on appeal in a criminal case, the issue before this [C]ourt is whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt ... In making our determination, this Court will accept the evidence and the most favorable inferences fairly drawn therefrom, which will support the verdict.

*State v. Davi*, 504 N.W.2d 844, 856 (S.D. 1993) (citations omitted); *see also State v. Edelman*, 1999 SD 52, ¶ 4, 593 N.W.2d 419, 421; *State v. Thompson*, 1997 SD 15, ¶ 34, 560 N.W.2d 535, 542–43; *Sprik*, 520 N.W.2d at 601; *State v. Brings Plenty*, 490 N.W.2d 261, 266 (S.D.1992).

[¶ 27.] The record contains sufficient evidence to sustain the jury's verdict against Augustine. The primary source of evidence is the videotaped confession, where he admits burning M.A. on various occasions when he was under the influence of alcohol and experiencing other difficulties in life.

[¶ 28.] Although guilt cannot be established by admission alone, *State v. Best*, 89 S.D. 227, 235, 232 N.W.2d 447, 452 (1975), Augustine's confession was corroborated by other evidence. The pediatrician who initially examined M.A. testified that when he first asked her what had happened, she told him that there were cigarette burns on her body. He also testified that while he could not say with certainty that all the wounds were from cigarette burns, he believed that some were certainly cigarette burns and that all were consistent with such an injury. Further, the detective who interviewed Augustine testified that, during the interview, he made hand gestures to show how he inflicted the injuries to M.A.

[¶ 29.] Augustine claimed at trial that his videotaped confession was a lie. He contended that he only admitted to the allegations because he wanted his children to be reunited with their mother (M.A. and her siblings were placed in foster care after the allegations of abuse arose on October 20, 1998), and he thought his confession would be a means to that end. His medical expert also testified that in his opinion, he did not believe the injuries to M.A. were cigarette burns; rather, he concluded they resulted from a skin infection. The jury apparently believed the State's version of events.

[¶ 30.] At sentencing, despite his earlier claims that his confession was fabricated and that M.A.'s injuries were not the result of cigarette burns, Augustine's counsel conceded that "[h]e admits that he probably did it but he doesn't remember the exact details."

[¶ 31.] Viewing the record in a light most favorable to the verdict, there was sufficient evidence to sustain the jury's verdict against Augustine on all four counts of child abuse. Affirmed.

[¶ 32.] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.