2001 SD 99

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Kenneth CATES, Defendant and Appellant.**

No. 21450.

Supreme Court of South Dakota.

Argued Jan. 9, 2001.

Decided July 25, 2001.

Mark Barnett, Attorney General, Patricia Archer, Assistant Attorney General, Pierre, SD, Attorneys for plaintiff and appellee.

Kevin Lewis, Pennington County Public Defender's Office, Rapid City, SD, Attorney for defendant and appellant.

KONENKAMP, Justice

[¶ 1.] Can a sex abuse perpetrator be convicted of both rape and criminal pedophilia for multiple acts of sexual penetration committed in the same period? The defendant contends that because the acts occurred in the course of one evening, multiple punishments for these acts constitute double jeopardy. We conclude that because there were at least two acts of sexual penetration, the two convictions were proper. In addition, the defendant appeals on several other grounds, including (1) the admission of hearsay evidence under SDCL 19–16–38; (2) the denial of a motion for a psychiatric exam of the victim; (3) the denial of access to the victim's counseling or psychiatric records; (4) the admission of expert testimony on the general characteristics of child sexual abuse; and (5) the insufficiency of the evidence to sustain the convictions. We affirm on all issues.

**A.**

[¶ 2.] On February 28, 1999, Debbie Dillon and her six-year-old daughter, P.B., went to Ken Cates's Rapid City home to check on P.B.'s bicycle, which Cates had promised to fix. Cates was cooking bratwurst and burgers for dinner and invited P.B. to stay and eat. Debbie felt comfortable leaving P.B. with Cates, as he was a long-time family friend. P.B. and her family spent a great amount of time with him. She even referred to him as "Uncle Ken," though he was not really her uncle. Before Debbie left, she and Cates arranged that he would drive P.B. home after din-

ner. P.B., Cates, and two of his neighbors ate together. After dinner the neighbors left. P.B. and Cates were alone.

[¶ 3.] Cates asked her if she wanted to play strip poker. She said "No," but then he became angry, so she changed her mind. He locked the doors, closed the shades, and dealt the cards. At the time, P.B. did not know what strip poker was, but on the first hand, "he like took off first." In each successive hand, Cates lost and then P.B. lost, until neither had any clothes on. Cates then "got on top" of her and "touched" with his fingers and "licked" inside her "private." When she got home that night, P.B. said nothing of the event to her mother. She was afraid to tell anyone. Cates had told her that if she did, her mother would "shoot a bullet through [Cates's] head." At the time, Cates was thirty-seven.

[¶ 4.] On March 4, 1999, Debbie took P.B. to the doctor after she complained that her "private" hurt when she urinated. During the examination, the doctor asked P.B. if anyone had touched her. She responded, "No." After leaving the doctor's office, however, P.B. asked her mother what strip poker was. When Debbie asked P.B. why she wanted to know, P.B. responded that Uncle Ken had showed her how to play. On arriving home, Debbie called the police and reported what she knew of the incident. While an officer was interviewing P.B. at her home, Cates showed up.

[¶ 5.] Cates was charged with one count of first degree rape and one count of

criminal pedophilia.[1] At trial, P.B. testified about the incident. It is undisputed that on several occasions she reported differing details on the specifics of this encounter.[2] These discrepancies were explored on cross-examination. While being cross-examined, she added that Cates's penis had gone inside her vagina. The State offered and the court allowed testimony by Officer Jerry Moore, Debra Dillon, and Steve Oberman. Each of these persons related statements P.B. had made about the incident. The court allowed these statements under the hearsay exception in SDCL 19–16–38. Additionally, the jury heard expert testimony offered by Lee Pfeiffer, a licensed psychologist. Pfeiffer explained the general characteristics of sexual abuse, the concept of "delayed reporting," and the relevance of inconsistencies when a child reports sexual abuse. Finally, the medical doctor who examined P.B. and found no physical evidence of sexual abuse testified that an absence of physical indications alone does not constitute proof that abuse did not occur. The jury found Cates guilty on both counts. He was convicted as a habitual offender in a court trial and sentenced to mandatory life in prison on both counts, with the sentences to run concurrently. Cates appeals.

**B.**

**Multiple Acts Constituting Rape and Pedophilia**

[¶ 6.] Cates believes that rape under SDCL 22–22–1(1) and pedophilia un-

---

1. SDCL 22–22–1 provides: "Rape is an act of sexual penetration accomplished with any person under any of the following circumstances:
 (1) If the victim is less than ten years of age...."
 SDCL 22–22–30.1 provides: "Criminal pedophilia is any act of sexual penetration accomplished with a victim less than thirteen years of age by any person twenty-six years of age

or older under any circumstances not constituting incest as defined in § 22–22–1(6)[.]"

2. On cross-examination, P.B. agreed that she had told different "stories." P.B.'s mother also testified that P.B. had confided that she did not tell police all the details because she did not want people to think she was a bad girl.

der SDCL 22–22–30.1 are "essentially the same," so he was punished twice for the same offense. When analyzing the double jeopardy provisions of the state and federal constitutions, we encounter a question of law, reviewable *de novo*. *State v. Beck*, 1996 SD 30, ¶ 6, 545 N.W.2d 811, 812 (citations omitted).

■ [¶ 7.] The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article VI § 9 of the South Dakota Constitution prohibit three types of government action. Stated succinctly, the prohibition applies to defendants prosecuted for the same offense after acquittal, prosecuted for the same offense after conviction, or subjected to multiple punishments for the same offense. *See State v. Augustine*, 2000 SD 93, ¶ 11, 614 N.W.2d 796, 797 (citations omitted). The only aspect at issue under these facts is the prohibition against multiple punishments for a single offense.

■ [¶ 8.] Cates believes that his convictions for first degree rape and criminal pedophilia were improper "[b]ecause identical facts were used to prove both offenses, and the victim was identical." This argument ignores that the jury was presented with evidence that Cates accomplished more than one act of penetration on P.B.[3] She testified that his fingers and tongue went inside her vagina. On cross-examination she answered "Yeah," when asked, "Did his—did [Cates's] penis go inside your private parts?"

■ [¶ 9.] The language in SDCL 22–22–1 (rape) and SDCL 22–22–2 (sexual penetration) evince a legislative intent "to punish separately each criminal sexual penetration." *State v. Sprik*, 520 N.W.2d 595, 598 (S.D.1994) (citations omitted). In *Sprik*, we refused to recognize a doctrine that would permit an offender committing multiple acts of penetration to limit conviction to one offense by characterizing the sexual assaults as a "continuous act." 520 N.W.2d at 598. Each act of sexual penetration constitutes a separate offense. Cates was not subject to double jeopardy.

## C.

### Hearsay From Child Victim

■ [¶ 10.] Cates challenges the trial court's decision to allow P.B.'s out-of-court statements. When reviewing an evidentiary ruling, we apply the abuse of discretion standard. *State v. Peterson*, 1996 SD 140, ¶ 8, 557 N.W.2d 389, 391 (citations omitted). SDCL 19–16–38 allows hearsay statements made by a child victim of a sex crime if "[t]he court finds ... that the time, content, and circumstances of the statement provide sufficient indicia of reliability...." SDCL 19–16–38.[4] *See also State v. Floody*, 481 N.W.2d 242, 251 (S.D.1992) (citations and internal quotations omitted). Additionally, the child must either testify at trial or be judicially declared unavailable. SDCL 19–16–38. *But see* M. Young and S. McDonald, The Aftermath of Coy v. Iowa: Are South Dakota's Child Witness Statutes in Jeopardy? 34 SDLRev 627 (1989)(discussing the constitutionality of this statute). *Cf. White v. Illinois*, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992).[5] P.B. testified at trial.

---

3. SDCL 22–22–2 defines sexual penetration as, "an act, however slight, of sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the body or of any object into the genital or anal openings of another person's body."

4. SDCL 19–16–38 also includes specific notice requirements. Proper notice is not an issue in this appeal.

5. There is no requirement under the Confrontation Clause that, before a court admits testimony under the spontaneous declaration and medical examination exceptions to the hear-

Therefore, the only question presented is whether her statements bore sufficient "indicia of reliability."[6] *See Floody*, 481 N.W.2d at 251.

[¶ 11.] As witnesses, children are neither inherently reliable nor inherently unreliable. Each child's statement must be evaluated on its own merits. Several factors should be considered when assessing reliability. These include: (1) the child's age and maturity; (2) the nature and duration of the abuse; (3) the relationship of the child to the offender; (4) the coherence of the statement, bearing in mind that young children may sometimes describe incidents in age appropriate language and in a disorganized manner; (5) the child's capacity to observe, retain, and communicate information; (6) the nature and character of the statement itself, considering the child's developmental limitations in understanding and describing sexual behavior; (7) any motivation of the child to make a false allegation or a false denial; (8) the child's susceptibility to suggestion and the integrity of the situation under which the statement was obtained; and (9) all the circumstances under which the statement was made. *See generally State v. Thompson*, 379 N.W.2d 295, 297–98 (S.D.1985). *See also* John W. Larson, South Dakota Evidence § 807.1 (2001). No single consideration is dispositive. Trial courts must examine the totality of the circumstances surrounding the statement.

*Idaho v. Wright*, 497 U.S. 805, 819, 110 S.Ct. 3139, 3148–49, 111 L.Ed.2d 638 (1990). A decision on reliability must be made before the admission of hearsay evidence. *State v. Buller*, 484 N.W.2d 883, 886 (S.D.1992) (citations omitted).

[¶ 12.] Before trial, the court took testimony to establish reliability under SDCL 19–16–38. The court also examined P.B. about the difference between truthfulness and untruthfulness. In its findings, the court concluded that the statements had "strong indicia of reliability." It found that the statements were reasonably consistent, timely made, and spontaneously provided, with no suggestion of a "devious intention."[7] Additionally, in examining the child's competence to testify, the court noted that P.B. was articulate, intelligent, and showed a complete awareness of the importance of telling the truth. From our review of the record, we cannot classify these findings as erroneous.

[¶ 13.] Cates alleges that because P.B.'s statements were made in response to questions and were not excited utterances, the statements were unreliable. He also asserts that each statement gave a somewhat different factual picture, so the statements were inherently unreliable. The first assertion is untenable. If the statements were excited utterances, then SDCL 19–16–38 could not have been invoked, as the statements would be admissi-

---

say rule, the declarant must be produced at trial or the court must find the declarant unavailable. *Id.* at 352–58, 112 S.Ct. 736.

6. No corroboration of abuse is necessary in a case where the child testifies at trial. The corroboration requirement for testifying sex crime victims no longer exists. *State v. Gonzalez*, 2001 SD 47, ¶ 18, 624 N.W.2d 836, 840–41. Thus, in this respect, the contrary requirement set forth in *State v. Spronk*, 379 N.W.2d 312, 313–14 (S.D.1985), is no longer valid. By the terms of SDCL 19–16–38, however, to show indicia of reliability corrobora-

tion is still required if the child is "unavailable."

7. The statements were made March 4 and March 11, 1999, four days and eleven days, respectively, after the incident. Cates argues that this factor should weigh in his favor because the four and eleven day window gave P.B. time to fabricate. We have upheld the admission of statements made after much lengthier delays. *See e.g. State v. Schoenwetter*, 452 N.W.2d 549, 550–51 (S.D.1990).

ble under SDCL 19–16–6. Those statements not made spontaneously were prompted by non-suggestive questions. As for the second assertion, the court found that the statements were reasonably consistent in such matters as the identity of the perpetrator, where the acts occurred, and how the incident began in a game of "strip poker." Any inconsistency would be only one factor to consider. *See Peterson*, 1996 SD 140, ¶ 13, 557 N.W.2d at 392. Consequently, we find no abuse of discretion in the admission of the child's statements.

### D.

### Psychiatric Exam of Victim

[¶ 14.] Cates moved for an order requiring P.B. to undergo a psychiatric exam. In denying the motion, the court found no "evidence that comes close to supporting the belief that there is any delusional behavior" to justify an examination. The decision to grant or deny such a mental health evaluation lies in the discretion of the court. *State v. Christopherson*, 482 N.W.2d 298, 304 (S.D.1992)(citing *State v. Blalack*, 434 N.W.2d 55, 60 (S.D. 1988)).

[¶ 15.] For an alleged sex abuse victim, the purpose of a psychological or psychiatric exam is to detect any mental delusions that would distort the victim's perceptions, thus casting doubt on credibility. *State v. Logue*, 372 N.W.2d 151, 155–56 (S.D.1985). Cates bore the burden of showing a substantial justification before his request could be granted. *See Blalack*, 434 N.W.2d at 60. He asserts that P.B. told her story four times with different details each time. According to

Cates, these inconsistencies when coupled with the absence of physical evidence constitute "grounds to question [P.B.'s] mental state." Inconsistency in testimony alone will not establish a suggestion of mental delusion. Furthermore, the jury was presented with expert testimony explaining that it is common for young children to give different details when recounting incidents of sexual molestation. The circuit court did not abuse its discretion in denying the motion.

### E.

### Discovery of Child's Mental Health Reports

[¶ 16.] Cates requested an order for "production of any counselor, psychologist, or psychiatric reports conducted on the alleged victim. . . ." He sought this material based on the inconsistencies in P.B.'s statements. He argued that an inconsistent statement to a counselor would constitute impeachment evidence. At the time of this request, Cates was "unaware" if P.B. had obtained any counseling or if any reports existed. Anticipating an invocation of privilege, Cates argued that any privilege that existed between P.B. and a counselor or a psychiatrist was waived when P.B. spoke to her mother and law enforcement officers and testified at a preliminary hearing.[8] In the alternative, Cates requested that the court conduct an in camera review of any reports.

[¶ 17.] The trial court denied the request, acting on the belief that such records were confidential. The judge acknowledged that this interpretation may be at odds with *State v. Karlen*. Nonetheless, the court went on to state that the

---

8. Cates cites *State v. Karlen*, 1999 SD 12, 589 N.W.2d 594, for his argument. He contended before the trial court that *Karlen* should be interpreted to hold "that once the victim tells

anybody else or gives a story or accusation and also tells a counselor, whether [the story] be same or different, confidentiality is waived."

solution to such a privilege dilemma would be an in camera review of the material. However, no order for an in camera review was entered, and the final written order simply stated that the defendant's motions were denied. Nothing in the record indicates that an in camera review occurred. An application for disclosure of a victim's mental health reports is a matter entrusted to the discretion of the trial judge. *See State v. Wade*, 83 S.D. 337, 343, 159 N.W.2d 396, 400 (S.D.1968); *State v. Wounded Head*, 305 N.W.2d 677, 679 (S.D.1981)(juvenile records). Consequently, we review such decisions deferentially, applying an abuse of discretion standard. *Id.*

[¶ 18.] We are unable to conduct an adequate appellate review of this matter because it is unclear from the settled record whether the requested reports exist. At the motion hearing, the following exchange occurred:

The Court: And has any report been issued from that counselor to your knowledge?

Prosecutor: To my knowledge, I have not inquired. So I do not know if any report has issued or not.

The Court: And for the record so we have a record for counsel's benefit, the name of the counselor if you know?

Prosecutor: I do not know, Your Honor.

The Court: But you could provide that?

Prosecutor: I could provide that.

The State provided the name of P.B.'s counselor to the court and defense counsel. There is nothing to suggest whether this counselor had any reports to disclose.

Nor is there any indication that defense counsel served the counselor with a subpoena to bring the reports to court for in an camera inspection. Thus, it is impossible for us, not knowing if the reports exist, to determine whether the trial court abused its discretion in denying defense counsel access to them. And if the reports do exist, we cannot know if they contain useful, discoverable material, and if denial of access was prejudicial. Cates, as the party claiming error, carried the responsibility of ensuring an adequate record. *State v. Jones*, 416 N.W.2d 875, 878 (S.D.1987)(citing State v. Olson, 408 N.W.2d 748, 752 (S.D.1987))(further citations omitted). When confronted with an incomplete record, we presume that the trial court acted properly.[9] *Id.* Thus we affirm the circuit court's order.

## F.

### Characteristics of Child Sex Abuse Victims

[¶ 19.] Expert testimony explaining the general characteristics of sexually abused children is admissible when relevant. *See State v. Edelman*, 1999 SD 52, ¶ 15, 593 N.W.2d 419, 422. *See also State v. Spaans*, 455 N.W.2d 596, 598–99 (S.D.1990). In fact, we have upheld expert testimony that went further than this case, allowing an expert to tie general characteristics to a particular victim. *Floody*, 481 N.W.2d at 249 (citations omitted). The testimony here was clearly within the bounds set in prior case law. Consequently, we cannot say that the court abused its discretion. *See Spaans*, 455 N.W.2d at 599.

---

**9.** Cates also argues that SDCL 23A–13–4 automatically entitles a defendant to production of psychiatric records. Such an interpretation contradicts the plain language of the statute. The statute limits production to reports "material to the preparation of the defense or are intended for use by a prosecuting attorney as evidence in chief at trial." SDCL 23A–13–4. Consequently, there must be proof of materiality before production is required. *See* SDCL 23A–13–4.

## G.

### Sufficiency of the Evidence

 [¶ 20.] Cates argues that the evidence was insufficient as a matter of law to convict him of first degree rape and criminal pedophilia. To prove first degree rape, there must be evidence showing that the transgressor accomplished an act of sexual penetration, however slight, against a victim less than ten years of age. *See* SDCL 22–22–1(1); SDCL 22–22–2. A conviction for criminal pedophilia requires proof of an act of sexual penetration by one who is twenty-six years or older, accomplished against a victim less than thirteen. *See* SDCL 22–22–30.1. At the time of the incident, Cates was thirty-seven, and P.B. was six. The only matter truly in issue was sexual penetration. Cates denied that any sexual contact occurred; therefore, the existence of sexual penetration was a question of credibility. It is the function of the jury to weigh the credibility of witnesses. *Sprik*, 520 N.W.2d at 601. We accord great deference to a jury's conclusions. *Id.* (Citations omitted). On appeal, we will not reassess credibility. From our examination of the record, there was sufficient evidence if believed by the jury to find Cates guilty beyond a reasonable doubt. *See Sprik*, 520 N.W.2d at 601 (S.D.1994) (citations omitted).

[¶ 21.] Affirmed.

[¶ 22.] MILLER, Chief Justice, and GILBERTSON, Justice, concur.

[¶ 23.] SABERS, Justice, concurs specially.

[¶ 24.] AMUNDSON, Justice, concurs in part and concurs in result in part.

SABERS, Justice (concurring specially).

[¶ 25.] I concur specially as there is evidence to support separate acts of penetration for both crimes.

AMUNDSON, Justice (concurring in part and concurring in result in part).

[¶ 26.] I concur as to issues C, D, E, F, G, and concur in result as to issue B since it is obvious that Cates can only serve one life sentence without parole and there is sufficient evidence in the record to convict on either criminal pedophilia or first degree rape.